**The STATE of Ohio, Appellee,**

v.

**MITCHELL, Appellant.**

[Cite as *State v. Mitchell* (1996), 117 Ohio App.3d 703.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70121.

Decided Jan. 21, 1997.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Arthur A. Elkins,* Assistant Prosecuting Attorney, for appellee.

*Charles H. Bragg,* for appellant.

PATTON, Judge.

A jury found defendant Maurice Mitchell guilty of one count of carrying a concealed weapon and one count of having a weapon while under disability. The two issues presented in this appeal are (1) whether the trial court abused its discretion by sentencing defendant Maurice Mitchell to a term of incarceration longer than that promised during plea negotiations and (2) whether counsel failed

to provide effective representation by neglecting to file a motion to suppress evidence.

The state's evidence consisted solely of testimony from two police officers who heard a gunshot while on night patrol. They headed in the direction of the gunshot, arriving about thirty seconds later. As they drove up the street they saw defendant coming toward them, with both hands in his pockets. The officers exited their cruiser and ordered defendant to remove his hands from his pockets. Defendant withdrew his hands, holding a firearm in his right hand. He placed the firearm behind his back, finally dropping the weapon after repeated warnings from the officers. The firearm contained one chambered round and four other rounds in the magazine.

I

Defendant's first assignment of error complains that the trial court abused its discretion when it imposed a lengthier sentence after defendant refused a plea bargain and insisted upon going to trial.

Before beginning trial, the court placed on the record a summation of plea discussions it had with both defendant and the state. The court said that in exchange for a guilty plea it would impose a sentence of four and one-half years, incorporating a three-year term of actual incarceration for the firearm specification to be served consecutively to a one-and-one-half-to-five-year minimum term for the charge of having a weapon while under a disability. The court noted that it ordinarily would not impose such a lenient sentence given defendant's past criminal history (which it described as "anything but attractive"), but believed a minimum sentence would be appropriate in light of defendant's age.

Defendant refused the plea bargain because he believed the parole authority would deny him parole at the expiration of four and one-half years based upon his criminal history. He believed he would ultimately serve as much time on a four-and-one-half-year sentence as he would with a ten-year sentence.

The court voiced its disagreement with defendant's conclusion stating, "I think you're hurting yourself going to trial here today, but of course, we'll go to trial if that's your wish, because I'm still ready, willing and able to give you that four-and-a-half-year open-ended sentence. * * * If you tell me you want a jury, why we're gonna bring the jury up here and give you a fair trial."

When addressed at sentencing, defendant voiced his opinion that the testifying officers had lied, that he had been represented incorrectly, and that the court had "influenced the jury." The court said it agreed with the jury's verdict and stated, "And assuming you're guilty, I think you're a damn fool for not accepting a very kind offer that was made by this judge."

The court went on to sentence defendant to a term of three to ten years on the concealed weapon charge, consecutive to a three-to-five-year term on the charge of having a weapon while under a disability. Both sentences were ordered to be consecutive to the three-year term of actual incarceration for the firearm specification. In announcing sentence, the court stated, "It isn't my intention to impose the maximum sentence on you. I wouldn't do that, just because you got convicted. You have a right to a trial, and you had the trial."

As a general proposition, the trial court has broad discretion to impose an indeterminate sentence, and that discretion is not abused if the sentence falls within the applicable statutory limit. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179, paragraph one of the syllabus.

However, once it appears in the record that the court has participated in plea negotiations, a tentative sentence has been discussed, and the court ultimately imposed a harsher sentence following a breakdown in negotiations, the record must show that the court gave no improper weight to the offender's failure to plead guilty and that the court sentenced the offender solely upon the facts of his case and his personal history. *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 75, 21 O.O.3d 371, 378, 425 N.E.2d 409, 416–417.

In *Alabama v. Smith* (1989), 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865, the court held that there is no presumption of vindictiveness on the part of the sentencing judge simply because the offender received a harsher sentence after being tried following vacation of a guilty plea. The court noted that "relevant sentencing information available to the judge after the plea will usually be considerably less than that available after a trial." *Id.* at 801, 109 S.Ct. at 2205, 104 L.Ed.2d at 874. During trial the judge may well gain "a fuller appreciation of the nature and extent of the crimes charged" as well as "insights into [the offender's] moral character and suitability for rehabilitation." *Id.* Therefore, unless circumstances are those in which there is a reasonable likelihood that the increase in sentence is the result of actual vindictiveness on the part of the sentencing judge, the offender has the burden of proving actual vindictiveness. *Id.* at 800, 109 S.Ct. at 2205, 104 L.Ed.2d at 873.

We find no abuse of discretion, since the record fails to show a reasonable likelihood that the sentence was the product of vindictiveness stemming from defendant's decision to go to trial. Several factors lead to our conclusion that the greater sentence was not imposed as a result of vindictiveness.

First, the court expressly stated that it would not impose the maximum sentence on the concealed weapons charge merely because defendant insisted upon his right to trial. True to its word, the court imposed a three-year term when it could have imposed a four-year term. It is important for purposes of

analyzing the length of the sentences received that we recognize that defendant, by rejecting the plea agreement, put the concealed weapon charge back into play. He thus opened the door to the possibility of having the court impose sentence for two counts instead of the one count discussed in the plea negotiations.

Second, the court found defendant's prior criminal history troubling, particularly his prior conviction for having a weapon while under a disability. During sentencing, the court told defendant:

"The sentence that I'm going to impose is going to be commensurate with the fact that you're guilty of these offenses, and you have a prior record for involuntary manslaughter and weapons disability. And I'm especially troubled by the weapons disability, because a person who has a prior weapons disability record should well understand that they can't carry a gun."

Defendant well knew this could be an important factor because the court expressly told him prior to trial that he would normally give an offender with defendant's prior record a substantially greater sentence than the one agreed to in plea negotiations. In fact, the court told defendant that, if convicted, his "terrible" past history left him facing the possibility of a ten-year maximum sentence. The greater sentence was therefore suggested based upon independent evidence of defendant's prior record, not simply because defendant insisted upon going to trial.

Finally, the court noted defendant's refusal to accept responsibility for his actions, in direct contradiction to the unrefuted evidence. Defendant choose to blame his conviction on perjured police testimony, incompetent counsel, and an unfair judge. The court found that this attitude reflected poorly on defendant's prospects for rehabilitation and cautioned against a lesser term of incarceration.

Admittedly, the court's role in brokering the plea bargain left it open to questions of coercion and possible compromise. See *State v. Byrd* (1980), 63 Ohio St.2d 288, 292, 17 O.O.3d 184, 187, 407 N.E.2d 1384, 1387–1388. In addition, certain remarks taken in isolation (for example, calling defendant "a damn fool" for rejecting the plea bargain) may well give the impression that the sentence imposed found its basis in part in the court's consternation with defendant's refusal to accept the plea bargain.

Nevertheless, we find that the factors outlined above gave the court a fuller appreciation of the nature of the offenses and a better insight into defendant's prospects for rehabilitation. *Alabama v. Smith, supra,* 490 U.S. at 801, 109 S.Ct. at 2205–2206, 104 L.Ed.2d at 873–874; *State v. Paige* (Dec. 22, 1994), Cuyahoga App. No. 66743, unreported, 1994 WL 716530. These factors alone sufficiently justified sentences that indisputably fell within the statutory limits. Accordingly,

we find no abuse of discretion in the sentence imposed and overrule the first assignment of error.

## II

In his second assignment of error, defendant complains that his appointed counsel failed to provide effective representation because counsel failed to move to suppress evidence of the firearm on the basis that the arresting officers did not objectively form a reasonable, articulable suspicion that defendant had fired the firearm.

In order to establish a claim of ineffective assistance of counsel, the burden is on the defendant to show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Johnson* (1986), 24 Ohio St.3d 87, 89, 24 OBR 282, 283–284, 494 N.E.2d 1061, 1063.

■ There is no *per se* rule that a defendant is entitled to a new trial if defense counsel fails to move to suppress evidence. *State v. Gibson* (1980), 69 Ohio App.2d 91, 94–95, 23 O.O.3d 130, 132–133, 430 N.E.2d 954, 956–957. When the alleged deficiency in counsel's performance relates to the failure to litigate a Fourth Amendment claim, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison* (1986), 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305, 319; *State v. Flors* (1987), 38 Ohio App.3d 133, 139, 528 N.E.2d 950, 956–957.

■ We find no actual prejudice present as a result of defense counsel's failure to move to suppress evidence, because defendant fails to show that the arresting officers lacked a reasonable and articulable suspicion to search him.

Under *Terry v. Ohio* (1968), 392 U.S. 1, 22, 88 S.Ct. 1868, 1880–1881, 20 L.Ed.2d 889, 906–907, an officer may approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest, as long as the officer has reasonable, articulable facts indicating that criminal activity is in progress or is about to be committed. An investigatory stop must be evaluated in light of the totality of the circumstances, viewed through the eyes of the reasonably prudent police officer, with due consideration to the officer's experience and knowledge. *State v. Bobo* (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus; *State v. Andrews* (1991), 57 Ohio St.3d 86, 88, 565 N.E.2d 1271, 1273–1274.

The arresting officers testified that they were patrolling east on Kosciuszko near East 87th Street at about 2:35 a.m. when they heard a single gunshot

coming from the south by Superior Avenue. They immediately turned their cruiser around and drove south a very short distance on East 87th Street in the direction of the gunshot. Less than thirty seconds later they saw defendant walking alone on the sidewalk, with both hands in his coat pockets. For their own protection, they ordered defendant to remove his hands from his pockets. One of the officers specifically stated, "I believed he had a weapon on him from the moment we started going down the street, cause I heard the shot. That's when I believed he had a weapon." Both officers testified that except for defendant, the area was deserted.

The facts relating to the officers' decision to stop defendant are understandably sparse because they were not at issue. The only issues were the charges of the concealed weapon and having a weapon while under a disability, both of which required relatively straightforward proof that defendant had a firearm on his person. Hence, the state had no need to sidetrack its case by presenting evidence of the circumstances showing why the officers stopped defendant, other than to place their testimony in context. Accordingly, we find under the totality of the circumstances and upon the limited facts relating to the stop itself that a motion to suppress evidence would have been unavailing. Consequently, defense counsel did not fail to perform an essential duty. The second assignment of error is overruled.

*Judgment affirmed.*

PORTER, J., concurs.

HARPER, P.J., dissents.

HARPER, Presiding Judge, dissenting.

Appellant's nine-year minimum sentence was statutorily correct pursuant to R.C. 2929.11(B)(6) and (7) and 2929.71. I am well aware that a reviewing court should not disturb a sentence within the statutory limits absent an abuse of discretion. *Toledo v. Reasonover* (1965), 5 Ohio St.2d 22, 34 O.O.2d 13, 213 N.E.2d 179; see, also, *State v. O'Dell* (1989), 45 Ohio St.3d 140, 543 N.E.2d 1220. I am also aware that where, as here, the record is silent with regard to the statutory factors contained in R.C. 2929.12, it is presumed that the trial court considered them. *State v. Cyrus* (1992), 63 Ohio St.3d 164, 586 N.E.2d 94; *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361. The trial court's brazen comments to appellant, both before and after trial, nonetheless persuade me to vehemently dissent from the majority's finding that the trial court did not abuse its discretion in rendering sentence. I, therefore, would have sustained appellant's first assignment and remanded the action for resentencing.

The majority cites *Alabama v. Smith* (1989), 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865, wherein the Supreme Court of the United States discussed the ramifications of *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. According to *Pearce,* a trial court does not necessarily violate the Due Process or Equal Protection Clauses of the United States Constitution by imposing a greater sentence upon a defendant's reconviction following a successful appeal. *Id.* at 723, 89 S.Ct. at 2079, 23 L.Ed.2d at 668. The increased sentence may have been prompted by events occurring subsequent to the first trial and information from a variety of sources, including presentence investigation reports or prison records. *Id.* The events and other information "may have thrown new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Id.,* quoting *Williams v. New York* (1949), 337 U.S. 241, 245, 69 S.Ct. 1079, 1082, 93 L.Ed. 1337, 1341. However, whatever the source, in order to foreclose a finding of retaliatory motivation, the reasons for an increased sentence must affirmatively appear in the record and be based on objective information that is obtained *after* the original sentencing. *Pearce,* 395 U.S. at 726, 89 S.Ct. at 2081, 23 L.Ed.2d at 670. The *Pearce* sentencing court's failure to cite any reason or justification for the increased sentence manifested a presumption of vindictiveness. *Id.*

The *Smith* court returned to *Pearce* in order to prevent a strict application of *Pearce* that would permit a presumption of vindictiveness in cases where a trial court sentences a defendant to a greater sentence upon reconviction when sentence was first imposed following entry of a guilty plea. *Smith,* 490 U.S. at 795, 803, 109 S.Ct. at 2203, 2207, 104 L.Ed.2d at 870, 875, overruling *Simpson v. Rice* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. See *Texas v. McCullough* (1986), 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (presumption of vindictiveness does not arise in every case in which a defendant receives a greater sentence upon reconviction); *United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74; *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (presumption of prosecutorial vindictiveness does not arise in pretrial bargaining cases when changes in charging decision are made following the defendant's rejection of bargain); *Chaffin v. Stynchcombe* (1973), 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714 (presumption of vindictiveness does not arise when, following a successful appeal, second jury imposes greater sentence than prior jury); *Colten v. Kentucky* (1972), 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (presumption does not arise in a two-tiered court system). The majority herein recognizes *Smith*'s admonition that a presumption of vindictiveness arises only where there is a reasonable likelihood that an increased sentence resulted from actual vindictiveness on behalf of the sentencing court. *Smith,* 490 U.S. at 799, 109 S.Ct. at 2205, 104 L.Ed.2d at 872–873. Otherwise, if a reasonable

likelihood is lacking, the defendant must prove actual vindictiveness. *Id.;* see *Wasman v. United States* (1984), 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424.

The majority fails to find that a reasonable likelihood exists that the trial court, out of vindictiveness, sentenced appellant to a nine-year minimum term of imprisonment when a four-and-one-half-year term was offered by the trial court prior to trial. Since there is neither a presumption of vindictiveness nor evidence of actual vindictiveness, the majority concludes that appellant is not entitled to resentencing. This is the point at which I strongly disagree with the majority's analysis and, consequently, its conclusion.

*Smith* and *Pearce* were guided by two basic principles, regardless of whether a presumption of vindictiveness arises where there is a reasonable likelihood that the increased sentence resulted from actual vindictiveness or whether actual vindictiveness must be shown by the defendant. First, a trial court's discretion with regard to sentencing allows consideration of a wide range of information, but the discretion should not be exercised with the purpose of punishing a successful defendant-appellant. Second, a violation of due process occurs when a trial court, influenced by a vindictive motive, sentences a successful defendant-appellant to a greater term of imprisonment. *Smith,* 490 U.S. at 798–799, 109 S.Ct. at 2204–2204, 104 L.Ed.2d at 871–873; *Pearce,* 395 U.S. at 723–726, 89 S.Ct. at 2079–2081, 23 L.Ed.2d at 668–670. See *McCullough* and *Goodwin, supra.*

In reading *Smith* and *Pearce,* it is apparent that when determining if vindictiveness plays a role in resentencing, the focus is on information obtained *after* the defendant successfully appeals or vacates the plea, and *during* and *after* the trial (*Smith* ) or second trial (*Pearce* ). See *Wasman,* 468 U.S. at 572, 104 S.Ct. at 3225, 82 L.Ed.2d at 435–436 ("[A] sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings"). I previously set forth the factors that could contribute to a greater sentence in *Pearce*-like cases. Additionally, regarding situations like that of *Smith* where sentencing is harsher after the vacation of a guilty plea and trial, the trial court may "gather a fuller appreciation of the nature and extent of the crimes charged." *Smith,* 490 U.S. at 801, 109 S.Ct. at 2206, 104 L.Ed.2d at 874. The defendant's testimony at the trial "may give the judge insights into his moral character and suitability for rehabilitation." *Id.* Finally, factors that may have initially promoted leniency in the first sentencing may not be present after the trial. *Id.*

*Smith* was thereby distinguished from *Pearce* insofar as the information available to the trial court in *Pearce* was relatively the same at the point of both sentencings. The *Smith* court stated in this regard:

"[E]ach of these [the foregoing] factors distinguishes the present case, and others like it, from cases like *Pearce.* There, the sentencing judge who presides

at both trials can be expected to operate in the context of *roughly the same sentencing considerations after the second trial as he does after the first; any unexplained change in the sentence is therefore subject to a presumption of vindictiveness.* In cases like the present one, however, we think there are enough justifications for a heavier sentence that it cannot be said to be more likely than not that a judge who imposes one is motivated by vindictiveness." (Emphasis added.) *Smith,* 490 U.S. at 802, 109 S.Ct. at 2206, 104 L.Ed.2d at 874.

*Smith* and *Pearce* concern the factual scenario where a trial court sentences a defendant on reconviction following a successful appeal. They are cases where a trial court is essentially informed that it committed an error and must provide a second opportunity for a defendant to defend himself or herself. They are cases that, in most part, potentially create a greater sense of vindictiveness, whereas in the present case, there was only one conviction and one sentence. In other words, the trial court in the present case was not called upon to correct a wrong by retrying a defendant, and any vindictiveness does not stem from appellant's lawful attack against a conviction. Although a presumption of vindictiveness generally does not arise in plea bargain cases like the present one, federal courts have either applied the *Pearce* presumption to, or recognized its application in, cases where a defendant rejected a plea bargain in favor of a trial and the trial court, prior to trial, linked a harsher sentence to the defendant's rejection. See, e.g., *Santana–Diaz v. United States* (C.A.1, 1996), 86 F.3d 1146; *United States v. Mena–Robles* (C.A.1, 1993), 4 F.3d 1026, modified on other grounds *sub nom. United States v. Piper* (C.A.1, 1994), 35 F.3d 611; *United States v. Crocker* (C.A.1, 1986), 788 F.2d 802; *Longval v. Meachum* (C.A.1, 1981), 651 F.2d 818.

In *Longval,* Longval petitioned for a writ of habeas corpus in the district court based upon the trial court's statement that it would impose a harsher sentence if he did not enter a plea. The district court's denial of the petition was reversed on appeal. The Supreme Court of the United States granted a petition for writ of certiorari, and remanded for further consideration in light of *United States v. Goodwin* (1982), 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74. *Meachum v. Longval* (1982), 458 U.S. 1102, 102 S.Ct. 3475, 73 L.Ed.2d 1362.

The *Goodwin* court first recognized the distinction between *Smith* and *Pearce,* and cases where there is only one trial, *e.g., Hayes, supra.* Since a plea negotiation is a legitimate process, a presumption of vindictiveness is not as *likely* in pretrial settings. *Goodwin,* 457 U.S. at 378–382, 102 S.Ct. at 2491–2493, 73 L.Ed.2d at 83–86. The *Longval* court was thus asked to reconsider its decision in light of this distinction.

The court of appeals, however, did not alter its decision on remand. It found that the trial court's comment about sentencing Longval to a more substantial term of imprisonment if he chose not to plead guilty led to "a reasonable

apprehension of vindictiveness." *Longval v. Meachum* (C.A.1, 1982), 693 F.2d 236, 237. A trial court should not make "a forceful recommendation to consider pleading [guilty], ending on a note of the judge's power to impose a substantial sentence if [the recommendation] is not complied with." *Id.* at 238. Resentencing is thus *required* whenever a state trial court's comment is "susceptible of appearing from the defendant's perspective to be an attempt to coerce him to plead." *Id.* at 237. The court of appeals based its *per se* rule on *Pearce* and *Blackledge v. Perry* (1974), 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628.

The relevance of *Longval*'s adoption of the presumption of vindictiveness reveals that the presumption is not outright inapplicable when a defendant rejects a plea offer and proceeds to trial. Even though the *Goodwin* and *Hayes* courts refused to find a presumption when plea bargaining is involved, in both cases, it was the prosecutor, not the trial court, who carried out a threat to impose greater charges if the defendant did not enter a plea. In cases such as *Longval* and the one now on appeal, the trial court sentenced a defendant to a greater term of imprisonment in accordance with the court's pretrial reference to a greater sentence upon the defendant's rejection of a plea. Stated simply, the rejection and the sentence cannot expressly go hand in hand. The Supreme Court of the United States denied a subsequent petition for writ of certiorari in *Longval, Meachum v. Longval* (1983), 460 U.S. 1098, 103 S.Ct. 1799, 76 L.Ed.2d 364, thereby leaving this rule in effect, *i.e.,* a presumption of vindictiveness where the trial court refers to harsher sentence if defendant fails to enter plea and follows through with harsher sentence at time of sentencing. Cf. *United States v. Moskovits* (C.A.3, 1996), 86 F.3d 1303 (trial court errs in considering refusal to plead guilty as aggravating factor in sentencing).

The Franklin County Court of Appeals expressed a comparable understanding in *Columbus v. Bee* (1979), 67 Ohio App.2d 65, 21 O.O.3d 371, 425 N.E.2d 409:

This court reviewed the propriety of a trial court's participation in the plea bargaining process in *State v. Kirby* (Oct. 25, 1990), Cuyahoga App. No. 59234, unreported, 1990 WL 161977. The trial court therein informed the defendant that he certainly had a right to a trial, and "it is not my policy to punish a defendant who wants to go to trial * * *." The court then stated:

"[I]t's a mandatory sentence if you're convicted. A minimum sentence of three to 15 years if you plead now before trial. If you *plead now* before trial begins, I told Mr. Tolliver that I would give you the *minimum sentence.* However, if we *go to trial* and you are *convicted,* any deal is off, because other matters may be brought to my attention during the trial from the witness stand and from yourself that affect my decision on sentencing, such as if you get on the witness stand and you lie or depending on what the police officers tell me about this particular case,

you may not get the minimum sentence after trial, and you could possibly be *sentenced to 15 years* [the maximum]." (Emphasis added.)

The defendant entered a guilty plea following this advice, but later moved to withdraw the plea based upon the trial court's "pressure." He argued that the trial court coerced the plea by promising a minimum sentence in exchange for the plea. As a result, the defendant feared that the court would retaliate by imposing the maximum sentence, an openly disclosed option. The trial court denied the motion to withdraw the plea and sentenced the defendant to a term of three to fifteen years.

This court, in reviewing whether the trial court had properly denied the motion, referred to the following passage in *Byrd, supra:*

"A judge's participation in the actual bargaining process presents a high potential for coercion. The defendant often views the judge as the final arbiter of his fate or at the very least the person in control of the important environment of the courtroom. He may be led to believe that this person considers him guilty of the crime without a chance of proving otherwise. He may infer that he will not be given a fair opportunity to present his case. Even if he wishes to go to trial, he may perceive the trial as a hopeless and dangerous exercise in futility." *Id.,* 63 Ohio St.2d at 292, 17 O.O.3d at 187, 407 N.E.2d at 1387. See *State v. Harper* (1988), 47 Ohio App.3d 109, 547 N.E.2d 395.

We then concluded in *Kirby:*

"In the present case the record supports appellant's belief that he felt pressured by the trial court into entry of his guilty plea, and that the trial would be a futile exercise resulting in a harsher penalty. As stated in *Byrd, supra,* the judge's actions in involving herself in the bargaining process indicated to appellant that his cause was futile and he had no choice but to accept a minimum term. The trial judge's efforts to secure a plea in this instance resulted in an involuntary plea. It was therefore an abuse of discretion for the trial court to deny appellant's motion to withdraw his guilty plea."

The trial court in the within case addressed appellant in the same manner as the court in *Kirby.* Specifically, both courts communicated that the defendants were free to pursue trial; a minimum sentence would be imposed upon the entry of a guilty plea; and harsher sentence would follow a trial. The only difference is that Kirby, and not appellant, succumbed to the trial court's pressure and entered a guilty plea rather than face possible retaliation on behalf of the trial court. The distinction between *Kirby* and the present case is illusory because the only difference is that the trial court here followed through with the threat to impose a harsher sentence.

The trial court herein, either ignoring the Ohio Supreme Court's admonitions in *Byrd* and *Griffey, supra,* or unaware of their existence, engaged appellant in the following dialogue prior to trial:

"THE COURT: All right.

"Mr. Mitchell, I want to put on the record our discussion of yesterday. You are charged in the first count of the indictment with carrying a concealed weapon. You understand that, don't you?

"THE DEFENDANT: Yes.

"THE COURT: And that carries a minimum of two, three—two, two and a half, three or four years in jail, maximum of ten years. You understand that, don't you?

"THE DEFENDANT: Yes.

"THE COURT: And the weapons disability charge carries one, one and a half, two, two and a half, three years, minimum, to a maximum of five years. You understand that?

"THE DEFENDANT: Yes.

"THE COURT: And I know you understand the firearm specification. That carries a flat three-year sentence. If convicted, you have to serve that flat two [*sic*] years day-for-day prior to, consecutive with the underlying substantive offense of weapons disability. Do you understand what I just said?

"THE DEFENDANT: Yes.

"THE COURT: Yes. Now, Mr. Mitchell, yesterday with counsel we talked, and I told you that the minimum sentence for all of this would be the four and a half years as it relates to the second count of the indictment; a year and a half for the disability, and three years for the firearm specification. So you would be serving four and a half years. You understand that?

"THE DEFENDANT: Yes.

"THE COURT: I told you you do have a prior record, it's anything but attractive. *It would be my normal posture to sentence you to substantially more than four and a half years.* I did tell you that, didn't I?

"THE DEFENDANT: Yes.

" * * * *

"THE COURT: * * * Because you're twenty-three years old, I felt that despite your past history, I could give you a minimum sentence, and I would give you a minimum sentence with the thought and the hope in mind that having served this minimum sentence, that you would recognize the error of your ways,

you'd rehabilitate yourself for whatever reasons, including jail, and come out of jail, get a job and live normally. I told you all that, didn't I?

"THE DEFENDANT: Yes.

"THE COURT: In other words, I'd give you the minimum sentence because of your youth as contrasted to your past history?

"However, your past history is terrible, and I told you that you do face maximum sentences that could add up to ten years. You do understand that, don't you?

"THE DEFENDANT: Yes, sir." (Emphasis added.)

After appellant declined the plea bargain offered by the trial court, he was found guilty of all the charges against him. The court then addressed appellant at the sentencing hearing as follows:

"THE COURT: * * * You know what I feel about you? I feel you're guiltier than sin. I can't be sure. I'm just a human being. And assuming you're guilty, I think you're a damn fool for not accepting a very kind offer that was made by this judge.

"I wanted you to enter a plea and accept my offer, which I've explained before. I could have given you a lesser sentence, because you're only what? Twenty-three years old?

"And I thought maybe by going to jail for a lesser period of time, you might be rehabilitated and could come out still well in your twenties and get a job and live normally, but you don't choose to admit to anything.

"* * *

"Mr. Mitchell, it isn't my intention to impose the maximum sentence on you. I wouldn't do that, just because you got convicted. You have a right to a trial, and you had a trial.

"And now, *the sentence that I'm going to impose is going to be commensurate with the fact that you're guilty of these offenses, and you have a prior record for involuntary manslaughter and weapons disability.* And I'm especially troubled by the weapons disability, because a person who has a prior weapons disability record should well understand that they can't carry a gun." (Emphasis added.)

The foregoing demonstrates that the trial court offered appellant a four-and-one-half-year minimum sentence if he pled guilty to the charge of having weapon while under disability, including the firearm specification. The four-and-one-half-year term consisted of one and one-half years on the disability charge and three years on the specification.

The trial court later termed appellant a "damn fool" at the sentencing hearing for not accepting the plea offer. The court expressly stated that it wanted appellant to enter a plea and accept the offer, implying that it did not want appellant to go to trial. The court then stated that it did not intend to impose the maximum sentence in response to appellant's rejection of the offer. The lengthiest minimum sentence was ten years—consecutive terms of three years on the firearm specification, four years for carrying a concealed weapon and three years for having a weapon while under a disability. The trial court actually sentenced appellant for a minimum of nine years—consecutive terms of three years for the specification, three years for carrying a concealed weapon and three years for having a weapon while under a disability. In other words, the trial court's disinclination to impose a ten-year minimum sentence (the maximum permitted under the law) led it to impose a minimum nine-year sentence, a somewhat paltry reduction.

The trial court had the following information in its possession when it offered appellant the four-and-one-half-year sentence: the basis for the charges pending against appellant, *i.e.*, appellant was legally prohibited from possessing a firearm, but was apprehended with one in his possession; appellant's "terrible" criminal history, *i.e.*, 1991 convictions for involuntary manslaughter, having a weapon while under a disability, and attempted drug abuse; and appellant's age of twenty-three years. The court offered the four-and-one-half-year sentence in exchange for appellant's admission of guilt and in light of appellant's age and the court's hope for rehabilitation.

The trial court had basically the same information in its possession at the time of sentencing. The trial court explained that it would not impose the maximum ten-year minimum sentence simply because the jury convicted appellant. Rather, the court stated that it imposed a nine-year minimum sentence because appellant was guilty and he had prior convictions for involuntary manslaughter and weapons disability. As stated above, appellant would have been sentenced to a minimum four-and-one-half-year term based upon these same factors—guilt and prior convictions. Appellant's age, the *major* consideration for offering the four-and-one-half-year sentence, did not change between the time of offering the plea bargain and rendering the nine-year minimum term.

The majority states that the trial court's comments may have "in isolation" given the impression that it sentenced appellant based upon the rejection of the plea. However, according to the majority, appellant's past history, his inability to admit guilt (making rehabilitation doubtful), and a fuller appreciation of the nature of the offenses justify the increased sentence. I wholeheartedly disagree with, and am deeply discouraged by, this rationalization.

Appellant did not testify at trial, so the only other information obtained by the trial court during trial is the description of events that led to appellant's arrest. Appellant thereafter maintained his innocence by questioning the credibility and integrity of the arresting officers and the court. Finally, without the benefit of the plea bargain, in addition to the firearm specification, appellant faced two weapons-related offenses, not one.

The *Pearce* presumption of vindictiveness arises in this case because the trial court was essentially working with the same information before and after trial. The record does not otherwise affirmatively show that the sentence was rendered based upon anything learned after appellant's rejection of the offer except for his refusal to plead guilty and acknowledge guilt. The trial court's and majority's reference to appellant's history as justifying the increased sentence is, therefore, untenable, because the trial court knew about appellant's history prior to trial. Under these circumstances, the trial court's posttrial comment that it found appellant's weapons disability "especially troubling" is especially troubling to me. Compare *State v. Thacker* (Jan. 24, 1995), Franklin App. No. 94APA06–831, unreported, 1995 WL 41619 (increased sentence not associated with failure to accept plea bargain offer where trial court unaware of defendant's prior history at time of plea negotiations).

Similarly, not much evidence was introduced at trial beyond appellant's possession of the weapon, and there were neither charges nor evidence that appellant used the weapon to harm anyone. Neither the trial court nor the majority, therefore, could justify an increased sentence on the receipt of evidence not known at the time of the plea offer, or evidence that demonstrated a heinous crime. See, *e.g., State v. Paige* (Dec. 22, 1994), Cuyahoga App. No. 66743, unreported, 1994 WL 716530; *State v. Smith* (Dec. 21, 1993), Franklin App. No. 93AP–855, unreported, 1993 WL 531297; *State v. Hale* (Oct. 13, 1989), Montgomery App. No. CA 11473, unreported, 1989 WL 119888; *State v. Terrell* (Jan. 1, 1981), Hamilton App. Nos. C–810148 and C–810164, unreported, 1981 WL 3816.

Since appellant's trial revealed nothing of significance about the nature of the offenses, see *Smith,* Franklin App. No. 93AP–855 and *Hale,* Montgomery App. No. CA 11473, and his criminal history was known prior to trial, the only justification for the harsher sentence was the failure to admit guilt. I know that the plea offer was premised on one offense, not two, but I am firmly of the opinion that this factor alone does not justify a minimum sentence of nine years, double that offered during plea negotiations between appellant and the trial court. Given the trial court's clearly enunciated opinion at the sentencing hearing—that appellant was a "damn fool" for not accepting the offer—I find it highly improbable that the nine-year minimum sentence was imposed without reflection on appellant's rejection of the offer. The consideration of the rejection

in rendering sentence clearly violates the constitutional tenet of both *Smith* and *Pearce.*

In summary, I staunchly believe that a presumption of vindictiveness arises in this case because there is a reasonable likelihood that appellant's rejection of the plea offer prompted the trial court to impose a harsher minimum sentence after trial and conviction. The presumption arises because the court possessed basically the same information before and after trial. See *Smith,* 490 U.S. at 802, 109 S.Ct. at 2206, 104 L.Ed.2d at 874 ("any unexplained change in the sentence is * * * subject to a presumption of vindictiveness" when sentencing court operates in "the context of roughly the same sentencing considerations"). Under these circumstances, the fact that appellant rejected the plea and went to trial on two versus one offense and failed to admit his guilt does not justify the increased sentence when the court initially believed appellant's age outweighed his "terrible" past history, a history fully known by the court prior to trial.

I also find that a presumption of vindictiveness arises based upon *Longval.* The trial court advised appellant to accept the plea or face a maximum ten-year term. The majority recognized this warning in its opinion. Specifically, the majority states: "In fact, the court told defendant that, if convicted, his 'terrible' past history left him facing the possibility of a ten-year maximum sentence." The trial court also informed appellant that without the plea and based upon his history, "[i]t would be my normal posture to sentence you to substantially more than four and a half years." I emphasize that the trial court referred to its "desire" at sentencing when it told appellant, "I wanted you to enter a plea and accept my offer * * *." Pursuant to the federal line of cases—*Santana–Diaz, Longval* and *Crocker*—appellant is also entitled to resentencing for this reason. Compare *Wasman, supra,* 468 U.S. 559, 104 S.Ct. 3217, 82 L.Ed.2d 424 (where events are known to trial court at time of first sentencing, but conviction based upon events does not occur until after first sentencing, trial court rebuts presumption of vindictiveness when harsher second sentence expressly related to intervening conviction); *Johnson v. Vose* (C.A.1, 1991), 927 F.2d 10 (even though no new information obtained between rejection of plea and time of sentencing, presumption not applicable when trial court's comment about harsher sentence came after near completion of trial).

Finally, in my opinion, even if the presumption of vindictiveness is not applicable herein, a trial court's characterization of a defendant who rejects a plea offer as a "damn fool" indicates nothing but *actual* vindictiveness. It is not a comment, given the entire underlying pretrial and posttrial discussion between the court and appellant, that can be taken "in isolation." This case presents a critical issue that should not be sidestepped by the tacit approval of a trial court's participation in the plea bargaining process, participation which unquestionably

affronts the laws of this state and the rights of its citizens. See *Byrd, Griffey, Bee* and *Kirby, supra.*

"To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.' " (Citations omitted.) *Bordenkircher,* 434 U.S. at 363, 98 S.Ct. at 668, 54 L.Ed.2d at 610. See *Chaffin; Pearce; United States v. Jackson* (1968), 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138. I find such a violation in the present case, and zealously dissent from the majority's conclusion to the contrary.