JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, Clarence Ganaway, appeals his conviction and sentence for multiple crimes. We affirm.
 {¶ 2} Ganaway was indicted on the following charges: aggravated robbery, a felony of the first degree, with one-and three-year firearm specifications, a repeat violent offender specification and a notice of a prior conviction; failure to comply with the order or signal of a police officer, a felony of the third degree; possessing criminal tools, a felony of the fifth degree; having a weapon while under disability, a felony of the third degree; and carrying a concealed weapon, a felony of the fourth degree.
 {¶ 3} The case proceeded to a jury trial. At the conclusion of the State's case, the defense made a Crim.R. 29 motion for acquittal, which was granted as to the repeat violent offender specification, but denied as to the remaining charges and specifications. The jury found Ganaway guilty on the remaining charges, and the court sentenced him as follows: five years for the aggravated robbery, to be served consecutive to the three-year gun specification; five years for the failure to comply with the order or signal of a police officer; one year each for possessing criminal tools, having a weapon while under disability and carrying a concealed weapon. The sentences were ordered to run consecutively; Ganaway was therefore sentenced to a total of 16 years. That sentence included maximum sentences for failure to comply with the order or signal of a police officer and possessing criminal tools, and *Page 4 
the minimum sentence for having a weapon while under disability. The sentences for aggravated robbery and carrying a concealed weapon were more than the minimum but less than the maximum. See R.C. 2929.14(A). The three-year-consecutive sentence for the firearm specification was mandatory. See R.C. 2929.14(D)(1)(a)(i).
 {¶ 4} The following facts were revealed through the trial testimony. The victim, Marcus Jacobs, worked as a service technician for B and H Laundry Coin Service ("B and H Laundry"). Jacobs' job included servicing and collecting the proceeds from coin-operated laundry machines located in rental properties in the Cleveland area. Jacobs traveled to the different sites in a service van equipped with GPS.
 {¶ 5} On the date of the incident, Jacobs arrived at an apartment complex in Shaker Heights at approximately 1:30 p.m. for a scheduled service stop. Jacobs testified that upon arriving at the complex, he pulled into the driveway, put the van in park and cracked open his door. According to Jacobs, while the van was running, he reached down between the front seats to retrieve some paperwork, and as he did, he felt a hand grab his shoulder and heard a voice say, "get the f — out of the truck." When he looked up, Jacobs saw a masked man holding a gun, the barrel of which was in his face. Jacobs described the gun as being silver and having a large barrel, and from his personal knowledge of guns, he believed it to be a 9-millimeter gun. *Page 5 
 {¶ 6} Jacobs testified that he followed the gunman's command and got out of the van. When he exited the van, the gunman let go of Jacobs' shoulder, and Jacobs ran to the front of the apartment building. Jacobs saw the gunman standing at the back of the van. Jacobs called 9-1-1 on his cell phone, and while on the phone with the dispatcher, he heard squealing wheels and saw the van being driven out of the driveway.
 {¶ 7} The police and B and H Laundry tracked the van through the GPS system. The system's activity report showed that after Jacobs' stop in Shaker Heights, the van registered as being in Cleveland, Garfield Heights and Parma, and as traveling at high rates of speed on city streets. The activity report further showed that between 1:40 p.m. (when the van registered as being at the Shaker Heights location where Jacobs testified the robbery occurred) and 3:01 p.m., the van registered as being parked on only two occasions, each time for two minutes. Parked meant that the van was either placed in park via the gearshift mechanism or had been at rest for two minutes.
 {¶ 8} Through the GPS system, the police were able to respond to the van's location. After the police observed the van, a chase ensued, with 15 police cars attempting to stop the van. The chase ended when the van's driver, later identified as Ganaway, ran a red light and crashed into a telephone pole. The chase, which lasted approximately six minutes and covered three to four miles, was high speed, *Page 6 
went through a school and construction zone, and involved one of the police cruiser's being hit by an unrelated vehicle.
 {¶ 9} According to the police, after the van crashed, the driver exited the van wearing a yellow raincoat and carrying a silver 9-millimeter gun, and started to run. One officer testified that as he pulled his police cruiser up to the driver in an attempt to block his path, he accidentally "clipped" him with his cruiser, causing the driver and the gun to fall to the ground. The driver was apprehended and the gun was recovered. At the time he was apprehended, the driver was missing a shoe; the matching shoe was later recovered from the van. The gun, which was determined to be operable, was loaded with eight rounds, and a lipstick holder recovered from the driver's pocket contained an additional eight rounds. A knit hat with two eyeholes and approximately $90 in coins were also recovered from the driver.
 {¶ 10} Jacobs identified the recovered hat and gun as the same hat and gun the gunman had when he encountered him in Shaker Heights. Jacobs also identified the yellow raincoat as his.
 {¶ 11} In his first assignment of error, Ganaway contends that he was denied effective assistance of counsel. In particular, Ganaway argues that his counsel was ineffective because he failed to have meaningful pretrial conversations with him and he did not object to Ganaway attending the trial in jail attire.[1] *Page 7 
 {¶ 12} In order to substantiate a claim of ineffective assistance of counsel, Ganaway is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of his trial would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,104 S. Ct. 2052, 80 L. Ed. 2d 674, paragraph two of the syllabus; State v.Brooks (1986), 25 Ohio St.3d 144, 147, 495 N.E.2d 407.
 {¶ 13} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner. State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128; Vaughn v. Maxwell (1965),2 Ohio St.2d 299, 301, 209 N.E.2d 164.
 {¶ 14} In Morris v. Slappy (1983), 461 U.S. 1, 103 S.Ct. 1610,75 L.Ed.2d 610, the United States Supreme Court held that theSixth Amendment to the United States Constitution does not guarantee a meaningful relationship between a defendant and his attorney. Id. at 14. In Morris, the defendant's attorney was hospitalized six days before trial and another attorney from his counsel's office was assigned to handle the case, which proceeded to trial as scheduled. On the third day of trial, the defendant moved for a continuance, contending that his new counsel was not prepared. Prior to that time, the defendant had not objected to the new counsel. In upholding the defendant's conviction, the Supreme Court noted that the defendant's concerns were untimely raised. Id. at 12-13. *Page 8 
 {¶ 15} Similarly, in this case, Ganaway's concerns about his counsel were untimely raised. In particular, he did not mention his concerns with his counsel until sentencing, despite having being given the opportunity to do so earlier.[2] We therefore find no merit to Ganaway's allegation that his counsel was ineffective because of his alleged unpreparedness.
 {¶ 16} Ganaway's claim of ineffective assistance based on his counsel's failure to object to him being in jail attire is also without merit. The United States Supreme Court refused to adopt a per se rule invalidating all convictions where a defendant appeared before a jury in jail attire in Estelle v. Williams (1975), 425 U.S. 501, 507,96 S.Ct. 1691, 48 L.Ed.2d 126. The Supreme Court noted that "it is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury." Id. at 508. The Court did hold, however, that it is a constitutional violation to compel a defendant to stand trial in jail attire. Id. at 505. In determining whether a defendant was compelled to stand trial in jail attire, the relevant inquiry is whether the defendant raises the issue before trial: "[f]ailure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish constitutional violation." Id. at 512-513. *Page 9 
 {¶ 17} Here, just before the trial commenced, the court noted the following in regard to Ganaway's attire:
 {¶ 18} "The one issue that the Court wishes to place upon the record at this juncture is the fact that the defendant is not in civilian clothing. Now, we've given him an opportunity to be present in civilian clothing, and it is my understanding that no one has provided him civilian clothing. So, just let the record reflect that."
 {¶ 19} Standing alone, this statement might well stand for the proposition that Ganaway was compelled to appear in jail attire; nothing was discussed as to how the court might have arranged for civilian clothing to be procured for him. However, since Ganaway made no objection when asked if he had any concerns, and the evidence was otherwise overwhelming, Ganaway's counsel was not ineffective by not raising the issue.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} In his second assignment of error, Ganaway argues that his sentence was harsher because he went to trial rather than pleading guilty.
 {¶ 22} In support of his allegation, Ganaway cites to a pretrial discussion the court had with his first counsel (who was being removed from the case at Ganaway's behest) regarding the minimum sentence, and the possibility of judicial release. At the conclusion of the conversation, the court told Ganaway, "[y]ou can talk to your new attorney about it. We're amenable to talking about a plea bargain, if you want to, in the future." Ganaway maintains that because he was sentenced to more than *Page 10 
the minimum after exercising his right to a trial, he was punished for going to trial. We disagree.
 {¶ 23} A defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement. State v. O'Dell (1989), 45 Ohio St.3d 140, 147,543 N.E.2d 1220. It is improper to sentence a defendant more severely simply because he exercised his right to trial. Columbus v. Bee (1979),67 Ohio App.2d 65, 425 N.E.2d 404. The United States Supreme Court has held that a trial court violates the Due Process Clause of theFourteenth Amendment when it imposes a harsher sentence motivated by vindictive retaliation. North Carolina v. Pearce (1969), 395 U.S. 711, 725,89 S.Ct. 2072, 23 L. Ed. 2d 656.
 {¶ 24} "The court cannot punish an accused for rejecting an offered plea bargain and electing to proceed to trial." State v. Paul, Cuyahoga App. No. 79596, 2002-Ohio-591, at 39-40, citing O'Dell, supra at paragraph two of the syllabus. Vindictiveness on the part of a sentencing court is not presumed merely because the sentence imposed is harsher than one offered in plea negotiations. State v. Mitchell (1997),117 Ohio App.3d 703, 706, 691 N.E.2d 354. To determine whether a court acted with vindictiveness, we look to see whether the record affirmatively shows retaliation as a result of the rejected plea bargain. Paul, supra, citing State v. Warren (1998),125 Ohio App.3d 298, 307, 708 N.E.2d 288. There must be some *Page 11 
positive evidence which portrays a vindictive purpose on the court's part. State v. Finley, Montgomery App. No. 19654, 2004-Ohio-661, T|42.
 {¶ 25} Although the trial court indicated to Ganaway before trial how he could minimize his time, the court never said that the sentence it imposed was given because he went to trial. The court did indicate that it was "sad" and "regrettable" that Ganaway had the "opportunity to enter into a plea bargain to minimize [his] time [and] mitigate [his] culpability." The court noted that with the evidence presented to the jury, Ganaway could have had "the ghost of Johnny Cochran," but unless the jury made a mistake, he would have still been convicted.
 {¶ 26} On this record, we do not find that the court gave Ganaway a greater sentence because he exercised his right to a trial. The court heard the testimony at trial. During the course of receiving evidence, a trial judge may well gain "a fuller appreciation of the nature and extent of the crimes charged" as well as receiving "insights into [the offender's] moral character and suitability for rehabilitation."State v. Mitchell (1997), 117 Ohio App.3d 703, 706, 691 N.E.2d 354, citing Alabama v. Smith (1989), 490 U.S. 794, 104 L.Ed.2d 865,109 S.Ct. 2201.
 {¶ 27} The trial testimony was overwhelming and demonstrated that Ganaway robbed Jacobs at gunpoint and led the police on an approximately six-minute highspeed chase through city streets that included construction and school zones. The chase also resulted in one police cruiser being involved in an accident with an unrelated vehicle. *Page 12 
 {¶ 28} In addition to having heard the trial testimony, the court had a psychological report for Ganaway. The court noted that issues addressed in the psychological report were "controlling," and the court had observed some of those issues first-hand during the trial, stating: "[y]ou're very narcissistic, you think the rules of society [don't] apply to you."
 {¶ 29} Moreover, when afforded the opportunity to address the court, Ganaway indicated that he was going to appeal his convictions and requested that he be sent to a prison where he could attend college. When the court asked Ganaway if he wished to apologize, Ganaway denied robbing Jacobs and insisted that he found the van with the keys in the ignition in Cleveland (not Shaker Heights) and got in it because he was cold. Ganaway denied seeing the police chase him, because the van's window were tinted, and, according to him, the police cars were unmarked. The court found Ganaway's version of the events "ridiculous," and even while the court was sentencing him, Ganaway demonstrated a lack of remorse, maintaining that the accident the police had with the unrelated vehicle "[w]asn't my fault."
 {¶ 30} Based on this record, the trial court's sentence was not in retaliation for Ganaway exercising his right to a trial, but rather, was based upon his narcissism, personality disorder and wholesale failure to accept responsibility for his own behavior. The second assignment of error is overruled. *Page 13 
 {¶ 31} In his third and final assignment of error, Ganaway contends that his sentence was inconsistent with the principles and purposes of sentencing under Ohio law and, therefore, contrary to law. We disagree.
 {¶ 32} R.C. 2929.11(A) provides that the overriding principles and purposes of felony sentencing are to protect the public from future crime by the offender and punish the offender. R.C. 2929.11(B) provides as follows:
 {¶ 33} "A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders."
 {¶ 34} The Ohio Supreme Court has held that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, paragraph seven of the syllabus; State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus.
 {¶ 35} Our review of a felony sentence includes a review of: 1) the presentence investigation report; 2) the trial court record in the case in which the sentence was imposed; and 3) any oral or written statements made to or by the court at the *Page 14 
sentencing hearing at which the sentence was imposed. State v.Kingrey, Delaware App. No. 04CAA04029, 2004-Ohio-4605, ¶ 14.
 {¶ 36} Ganaway cites the following as evidence that his sentence was inconsistent: he was 50 years old and had not had a serious offense prior to this one for almost thirty years, and the offense arose from his dire personal situation (he was homeless, cold and hungry).
 {¶ 37} Upon review, we do not find that Ganaway's sentence was inconsistent and contrary to law. Because the case proceeded to sentencing immediately after the verdict, there was no presentence report, but the court did have a psychological report, which it considered and, of course, had just heard the trial testimony. Implicit in the court's sentencing colloquy was its belief that Ganaway needed to be punished and society needed to be protected from him. Moreover, to the extent that Ganaway argues that the sentence was excessive, we note that he received the maximum sentence on two of the charges, the minimum sentence on one charge, and more than the minimum but less than the maximum on two charges. (See State v. Young, Montgomery App. No. 21635,2007-Ohio-3155, TJ10-11, holding that an imposed sentence that was half of the maximum that could have been imposed was not excessive.)
 {¶ 38} The third assignment of error is overruled.
Affirmed.
 It is ordered that appellee recover from appellant costs herein taxed. *Page 15 
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, A.J., and ANN DYKE, J., CONCUR
[1] The attorney of whom Ganaway complains was his second attorney; Ganaway's first attorney was removed at Ganaway's request for also allegedly being unprepared.
[2] In addressing some pretrial issues prior to voir dire, the court specifically asked Ganaway if there were any additional issues, to which he responded "no." *Page 1