JOURNAL ENTRY and OPINION
Defendant-appellant Lewis Payton appeals from the trial court's imposition of maximum and consecutive terms of incarceration upon him following an order of remand from this court for re-sentencing.
Appellant asserts his sentence is improper on several grounds. He contends the sentence results both from the trial court's desire to punish him for exercising his constitutional right to a trial by jury and from the trial court's lack of impartiality. Appellant also contends the trial court failed to comply with statutory requirements in ordering his terms for the four convictions to be served consecutively. Finally, appellant asserts his counsel rendered ineffective assistance at the re-sentencing hearing.
Following a review of the record, however, this court concludes reversible error did not occur. Appellant's sentence, therefore, is affirmed.
Appellant's case previously was considered by this court in State v. Payton (Dec. 14, 2000), Cuyahoga App. No. 76967, unreported (Payton I). Therein, appellant challenged his convictions for breaking and entering, vandalism, possession of criminal tools, and receiving stolen property. Since appellant argued his convictions were against the manifest weight of the evidence, this court thoroughly reviewed the testimony presented by the state's witnesses, then stated in relevant part as follows:
 Payton maintains that the circumstantial evidence used against him was too unreliable to sustain a conviction (sic), as the police did not determine whether footprints at the store matched his, and did not search for or find his fingerprints in the store, on [the victim's] purse, or on the crowbars. He claims that [Police Officer] Byrne could not credibly identify him because Byrne only saw a suspect wearing a ski mask from some distance away in the dark, and that [Payton] could only be coincidentally linked with the discovery of the bags. We disagree.
 The jury heard substantial competent and credible evidence justifying conviction, and was entitled to reach the verdicts returned.
 Circumstantial evidence is competent, probative evidence and can be the sole basis of a conviction. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph one of the syllabus. Although circumstantial, the evidence here pointed strongly, almost inescapably, toward Payton. After chasing a suspect from the scene of a break-in, police found Payton inexplicably hiding in the back of a car that did not belong to him, in a garage that was not his residence. He was wearing the same color clothes as those the suspect was seen wearing, and two bags the suspect was seen carrying were found within fifty feet of his hiding place. One of the bags contained a purse that was identified as having been inside the store when it closed four hours earlier. The jury reasonably concluded that Payton was guilty of the acts alleged, and we find no manifest injustice in his convictions.
In sua sponte reviewing appellant's sentence, however, this court recognize[d] plain error in the sentencing proceedings. Since the trial court sentenced appellant to four consecutive prison terms of twelve months, it was required to comply with several mandates of * * * R.C. Chapter 2929. This court determined the trial court complied with R.C.2929.13(B)(1) and R.C. 2929.13 in ordering prison terms for the fifth-degree felonies but failed either to consider necessary factors relevant to consecutive sentences or to state necessary findings and reasons for imposing the maximum term for each offense.
The examination in Payton I of the trial court's comments at appellant's original sentencing hearing led to an unusual request. In footnote 2, this court gave the following admonition:
* * *
 [W]e have previously expressed our concern with this same judge's inappropriate comments during sentencing. See State v. Warren (1998), 125 Ohio App.3d 298, 308, 708 N.E.2d 288, 294-95. Moreover, in [this] proceeding the judge berated Payton and made a statement that could be inferred as meaning that his sentence was imposed based on Payton's decision to go to trial (Despite that fact, despite the evidence, you try the case, you demonstrated no remorse, and now you expect a break from me?) We again implore a judge to refrain from such comments.
The opinion in Payton I concluded with the observation that the trial court:
* * *
 made no attempt to assess the proportionality of the sentence to the seriousness of Payton's conduct in this case. Although Payton did appear to pose a strong likelihood of recidivism, the provisions of R.C. 2929.14(E)(4)(a) do not allow consecutive sentences based solely on that likelihood.
 The sentences must also fit the conduct in the case at hand. Here it appears that the judge imposed the sentence based on Payton's past convictions, as the seriousness of the offenses committed did not themselves warrant a four-year prison sentence.
Appellant's case, therefore, was remanded only for a re-sentencing hearing. Appellant was represented at the hearing by the same attorney who had represented him in the appellate court. The first matter for consideration at the hearing was appellant's previously-filed motion to disqualify his attorney.
The trial court assured appellant he would receive new counsel and a continuation of the hearing if that were his desire. Appellant, however, stated to the trial court he withdrew the motion. Thereafter, counsel addressed the trial court on behalf of his client.
Appellant's counsel noted appellant already had served a significant portion of his original sentence. Counsel further noted appellant had made arrangements for housing and employment should the trial court consider a community controlled sanction rather than prison terms for appellant's convictions. Finally, counsel observed appellant had abided by all the rules and regulations while incarcerated.
The prosecutor presented a different viewpoint. He reminded the trial court of the facts of the case, the fact that appellant had committed the crimes while on post-release control for another offense, and appellant's 13 prior felony convictions dating from 1976 to the current case. The prosecutor requested the trial court re-impose the original sentence.
Appellant then spoke on his own behalf. He stated he was sorry for what [he] did. Appellant told the trial court that at the time he committed the offenses, he had a lot of issues, which he had thought about while incarcerated, and now wanted to straighten [his] life around.
Appellant's comments led the trial court into a discussion concerning appellant's criminal record in conjunction with the abundance of evidence presented in the present case. The trial court indicated that since appellant had been in the system a lot, he would have been aware that a plea bargain might have been an advantageous path to pursue.
The trial court assured appellant that it didn't punish people because they want to take a case to trial; however, inasmuch as the sentencing factors did permit a trial court to consider a defendant's criminal history, the trial court indicated it sought appellant's fundamental reason for pursuing the matter, asking appellant if the police screwed up and arrested the wrong guy.
Appellant answered only that the incident didn't happen like they said it happened. He indicated that the police officers' statements at his preliminary hearing differed to a degree from their testimony at his trial. Therefore, as he had on appeal in Payton I, appellant essentially challenged the weight of the evidence presented at his trial.
The trial court differed, stating that appellant had been caught red-handed. Appellant then began to argue with the trial court about the system, protesting that on the night of the incident, he simply ran because * * * [he] was black. Appellant's turnabout from his original expression of remorse caused the trial court to reconsider its intention to give [him] a break since it believed appellant was engaging merely in manipulation. Although interrupted at times, the trial court thereupon pronounced sentence as follows:
 The purpose of 2929.11 when you are sentencing an individual is to protect the public and punish the offender. The punishment should not demean the seriousness of the offense. Prison is warranted under 2929.13(B)(1)for an F5 which isn't probationable if the defendant has previously served a prison term, for instance, as you have * * *, or committed the crime while on post-release control. Both of those factors occurred in this case.
 You have served prison time. You have committed this crime while you were on post-release control.
 Now, the maximum sentence is warranted pursuant to 2929.14(C) if this offense is the worst form of the offense or if the defendant poses the greatest likelihood of committing future crimes, okay? And in your instance I do believe this is the worst form of the offense and I do believe that you pose a great likelihood of committing future crimes.
* * *
* * *
 The reason this is the worst form of the offense is because you are a liar and you've been lying your way through this case, and I'm not going to have you lying on the police. The police have a hard enough job without a — how shall I say this in an objective term — a criminal like you.
THE DEFENDANT: It's hard to believe, ain't it?
 THE COURT: Coming in here lying on the police, okay? You know something? The next thing you want to do is you want to make this a racial incident. I suppose you want to make this a Rodney King thing, and you won't be happy until —
 THE DEFENDANT: Just give me what you going to give me. We can do without the speeches. Give me what you are going to give me.
THE COURT: I'm not done yet.
 THE DEFENDANT: I don't want to hear that. If you are going to give it to me, give it to me. We don't have to preach all this. Do what you have to do. Come on.
THE COURT: Consecutive sentences in this case —
 THE DEFENDANT: Do what you have to do. Give it to me. You don't have to bring me back for this. I know what it was. I'll see you again real soon.
THE COURT: You'll see me again?
 THE DEFENDANT: I have the paperwork right here waiting on you.
THE COURT: You have paperwork waiting on me?
THE DEFENDANT: Yeah, some more legal work.
 THE COURT: Listen, I'm going to tell you something right now. I invite you to come back.
THE DEFENDANT: I'll be back. You know I'll be back.
 THE COURT: I want to make a couple findings. It's necessary to protect the public from this malefactor, this career criminal.
 To punish this offender by not giving him a maximum consecutive sentence would be to demean the significance of his criminal conduct that he has been involved in all his life. Consecutive sentences in this case are appropriate because of the seriousness of the crimes, because of his continuous lying, because of his allegations of racial abuse against the police, which is (sic) completely unfounded in this case, and to protect the public from his future lawlessness.
* * *
 This individual has been convicted of trespassing in 1976 * * *.
 1976 trespassing; December `76 possession of criminal tools; `77 possession of criminal tools, November of `77 receiving stolen property. He's also been convicted of crimes of violence. We have felonious assault in January of `82; possession of criminal tools in December of `81; intimidation in 12-81.
* * *
 Breaking and entering in September of `81; RSP of a motor vehicle in December of `81; RSP of a motor vehicle in June of `93; grand theft of a motor vehicle in May of 1993; theft in June of `96; theft in January of `98.
 Clearly under 2929.14 maximum sentences are warranted in this case and under 2929.14(E)(4).
 Under 2929.13(B)(1)(A) through (H) I make findings of (G) and (H) being present here and finally to protect the public and punish the offender pursuant to 2929.11(A). I'm making that finding also, and also because, Mr. Payton, you are disrespectful to this Court, you are disrespectful to the police.
* * *
 He's sentenced on all four counts to the maximum period of incarceration, and that is a year on Count One, a year on Count Two, a year on Count Three, a year on Count Four. All of those sentences are consecutive again.
THE DEFENDANT: See you. (Emphasis added.)
Appellant has filed a timely appeal from the trial court's order of re-sentence. His first, second and fourth assignments of error present similar issues; therefore, they are addressed together as follows:
 I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PUNISHED APPELLANT FOR EXERCISING HIS SIXTH AMENDMENT RIGHT TO A JURY TRIAL BY RE-SENTENCING APPELLANT TO MAXIMUM, CONSECUTIVE TERMS OF INCARCERATION.
 II. APPELLANT WAS DENIED DUE PROCESS WHERE THE TRIAL COURT DEMONSTRATED A LACK OF IMPARTIALITY AND CONSIDERED INAPPROPRIATE FACTORS IN RE-SENTENCING APPELLANT TO MAXIMUM, CONSECUTIVE TERMS OF INCARCERATION, AMOUNTING TO PLAIN ERROR.
 IV. THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO CONSECUTIVE TERMS OF INCARCERATION WITHOUT SETTING FORTH THE MANDATORY FINDINGS REQUIRED BY R.C. SS2929.14(E)(4) AND 2929.19(B)(2)(c).
Appellant claims in these assignments of error that his sentence results from improper considerations and a biased attitude on the part of the trial court. He first asserts the trial court sentenced him harshly based upon both his decision to take his case to trial and a sense of personal affront due to the order of remand for re-sentencing. Appellant further asserts the trial court once again failed adequately to comply with statutory requirements in pronouncing sentence. This court remains unpersuaded.
In addressing a similar claim as the one made by appellant herein, this court stated as follows:
* * *
 [I]t is axiomatic that a defendant is guaranteed the right to a trial and should never be punished for exercising that right[.] State v. O'Dell (1989), 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227. Thus, the augmentation of sentence based upon a defendant's decision to stand on his right to put the government to its proof rather than plead guilty is improper. United States v. Araujo (C.A.2, 1976), 539 F.2d 287, certiorari denied sub. nom. Rivera v. United States (1976), 429 U.S. 983, 97 S.Ct. 498, 50 L.Ed.2d 593; United States v. Hutchings (C.A.2, 1985), 757 F.2d 11, 14; United States v. Derrick (C.A.6, 1975), 519 F.2d 1, 3. This rule applies no matter how overwhelming the evidence of [defendant's] guilt. Id. at 3.
 Moreover, courts must not create the appearance that it has enhanced a defendant's sentence because he has elected to put the government to its proof. United States v. Hutchings, supra; United States v. Stockwell (C.A.9, 1973), 472 F.2d 1186, 1187. The Stockwell court stated:
 Here, * * * the defendant contends he was punished with four additional years in prison for taking the court's time with a trial. While we do not believe that the experienced trial judge actually punished the defendant for standing trial, the record leaves unrebutted the inference drawn by the defendant.
 If there was such a use of the sentencing power, the constitutional right to a trial would be impaired. See Baker v. United States, 412 F.2d 1069, 1073 (5th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); United States v. Wiley, 278 F.2d 500
(7th Cir. 1960). The chilling effect of such a practice upon standing trial would be as real as the chilling effect upon taking an appeal that arises when a defendant appeals, is reconvicted on remand, and receives a greater punishment. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656
(1969).
 We recognize the variety of considerations that can bear upon a sentence. A genuine admission of guilt may properly result in a lighter sentence than would be appropriate for an intransigent and unrepentant malefactor. See, e.g., Gollaher v. United States, 419 F.2d at 530. However, courts must not use the sentencing power as a carrot and stick to clear congested calendars, and they must not create an appearance of such a practice.
 Where such appearance has been created, the appellate court will determine whether the record contains an unequivocal statement as to whether the decision to go to trial was or was not considered in fashioning the sentence.
 See United States v. Hutchings, supra. Absent such an unequivocal statement, the sentence will be reversed and the matter remanded for resentencing. Id.; United States v. Medina Cervantes (C.A.9, 1982), 690 F.2d 715, 716-717.
State v. Scalf (1998), 126 Ohio App.3d 614, 620-621. (Emphasis added.)
In like vein, a trial court should act in a manner that promotes public confidence in the integrity and impartiality of the judiciary. Disciplinary Counsel v. Ferreri (1999), 85 Ohio St.3d 649, 652. With the foregoing standards in mind, several factors lead to the conclusion the trial court did not commit reversible error in this case.
First, since appellant already had been convicted and sentenced, it is difficult to credit his argument the trial court desired on remand to punish him for exercising his right to a trial. Cf., State v. Laing (Dec. 2, 1999), Cuyahoga App. No. 73927, unreported. Significantly, this court made no such determination in Payton I despite sua sponte finding plain error in the trial court's failure to reference statutory requirements in pronouncing appellant's original sentence, and also despite including an admonitory footnote in the opinion. State v. Williams (Oct. 15, 1995), Cuyahoga App. No. 67970, unreported; cf., State v. Warren (1998),125 Ohio App.3d 298.
Second, since appellant did not receive a greater sentence on remand than the one originally imposed, no presumption of vindictiveness exists. State v. Starks (Dec. 31, 1997), Sandusky App. No. S-97-034, unreported; see, also, State v. Papadelis (Sept. 4, 1991), Medina App. No. 1976, unreported.
Without such a presumption, this court will not reverse when the record contains, as it does here, the trial court's unequivocal statement that it does not punish people because they want to take a case to trial. State v. Daniels (Apr. 26, 2001), Cuyahoga App. No. 77998, unreported; cf., State v. Scalf, supra.
Third, the trial court's comments, when placed in the context of the entire re-sentencing proceeding, demonstrate a legitimate basis for its decision to impose the original sentence. Appellant displayed an attitude that demonstrated contempt for the legal process, which, in view of his lengthy criminal history, deeply troubled the trial court.[1] State v. Mitchell (1997), 117 Ohio App.3d 703; State v. Whittaker (Dec. 11, 1997), Cuyahoga App. No. 71975, unreported.
Although this court concedes the trial court made some intemperate comments, the comments mainly occurred only in response to behavior on appellant's part that manifested his intent to goad the trial court. Considering the record in its entirety, this court cannot find that the trial court's utterance of ill considered words in response to appellant's deliberately provocative remarks either tainted the fairness of the entire proceeding or demonstrated the trial court's prejudice against appellant.[2] Id.; State v. Mitchell, supra.
Similarly, the record supports a conclusion the trial court complied with statutory requirements in ordering appellant's sentences to be imposed consecutively. R.C. 2929.14(E)(4) provides:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
(Emphasis added.)
Additionally, R.C. 2929.19(B)(2)(c) requires a trial court to make a finding that gives its reasons for selecting consecutive sentences.
A review of the trial court's comments reveals it made the necessary findings. Although the trial court used the word appropriate rather than the words not disproportionate, the record demonstrates the trial court several times was interrupted while it was attempting to comply with the statutory directives. It would elevate form over substance, therefore, for this court upon review to conclude the trial court did not adequately perform its duty. The trial court explained its findings that consecutive sentences were necessary to protect the public and to punish appellant and were justified based upon the seriousness of the crimes, appellant's commission of the crimes while on post-release control, and appellant's obvious disrespect for the law. Similar discourses previously have been deemed sufficient for purposes of R.C. 2929.19(B)(2)(c). State v. Daniels, supra; State v. Haugh (Mar. 19, 2001), Washington App. No. 00CA18, unreported; State v. Rackham (Feb. 8, 2001), Franklin App. No. 00AP-531, unreported.
Since this court thus cannot, pursuant to R.C. 2953.08(G), clearly and convincingly find appellant's sentence is improper, his first, second and fourth assignments of error are overruled.
Appellant's third assignment of error states:
 APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO SEEK THE TRIAL COURT'S RECUSAL, REMOVAL, OR DISQUALIFICATION.
Appellant argues his counsel at the sentencing hearing rendered constitutionally ineffective assistance in overlooking the trial court's lack of impartiality toward appellant. Appellant's argument lacks merit for the following reasons.
First, appellant's action in withdrawing his motion to disqualify counsel essentially acted as a waiver of his current argument. Appellant, at the outset of the hearing, was presented with the clear opportunity to obtain a different representative; appellant chose instead to proceed with the attorney who had been partially successful in representing him in Payton I. State v. Williams (1977), 51 Ohio St.2d 112.
Second, appellant bases his argument on his assertions raised in his first and second assignments of error. In view of this court's disposition of appellant's first and second assignments of error, his argument collapses.
Third, the record of this case demonstrates counsel was well prepared and eloquent in his representation of his client. Appellant cannot, therefore, meet the first requirement of the test to establish ineffective assistance of counsel as set forth in State v. Bradley (1989), 42 Ohio St.3d 136 at the syllabus.
For the foregoing reasons, appellant's third assignment of error also is overruled.
Appellant's sentence is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, J. CONCURS TIMOTHY E. McMONAGLE, P.J. CONCURS IN JUDGMENT ONLY.
[1] In spite of overwhelming evidence of guilt, as determined in Payton I, appellant made the following unsupportable claims: his original trial attorney had sold him out, the police deliberately had misrepresented evidence to obtain his convictions, and he was arrested solely on the basis of his race. Appellant made these outrageous claims as he repeatedly interrupted the trial court's attempts to pronounce sentence.
[2] In so stating, this court does not suggest such intemperate and gratuitous comments in the future will not be carefully scrutinized, as they came quite close to compromising the legality of the sentence imposed upon appellant, whose lengthy record of convictions over a time period of more than twenty years supports the trial court's label of him as a career criminal.