[Cite as *State v. Shepherd*, 2012-Ohio-5415.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 97962

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ELIJAH SHEPHERD

DEFENDANT-APPELLANT

## JUDGMENT:
CONVICTIONS AFFIRMED;
SENTENCE VACATED IN PART;
REMANDED FOR RESENTENCING

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-550339

**BEFORE:** Boyle, P.J., Jones, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** November 21, 2012

**ATTORNEY FOR APPELLANT**

John T. Castele
614 West Superior Avenue
Suite 1310
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:   Ma'rion D. Horhn
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1}   Defendant-appellant, Elijah Shepherd, appeals his conviction and sentence.

He raises six assignments of error for our review:

[1.] The defendant was deprived of his right to a speedy trial as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution.

[2.] The trial court erred in allowing recorded telephone conversations into evidence without the recordings being properly authenticated.

[3.] Defendant was denied effective assistance of counsel by the failure of defense counsel to request an instruction on the inferior degree offense of aggravated assault or present an argument for self-defense.

[4.] The trial court erred when it received a jury question and answered it without consulting counsel and outside the presence of defendant.

[5.] The defendant's sentence was contrary to law in that the defendant claims he was given a much longer sentence for rejecting a plea bargain and exercising his right to a jury trial.

[6.] The defendant was deprived [of] his right to a fair trial by the cumulative effect of all errors, even if any one of those errors may be ruled as harmless.

{¶2}   After a review of the record and pertinent law, we affirm Shepherd's

convictions, but find his sentence to be contrary to law in part.   We vacate those portions

of his sentence that are contrary to law.

Procedural History and Factual Backround

**{¶3}** On May 24, 2011, Shepherd was indicted on three counts: two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (A)(2), with one- and three-year firearm specifications, and one count of having a weapon while under a disability, in violation of R.C. 2923.13(A)(3). The indictment arose from allegations that on the night of January 29, 2011, Shepherd shot Gregory Dotson at the Spot II Lounge after the two got into an argument over $100.

**{¶4}** After failed plea negotiations, Shepherd waived his right to a jury trial on the charge of having a weapon while under a disability, and that count was tried to the court. The remaining charges were tried to a jury, where the following facts were presented.

**{¶5}** The state presented six witnesses: (1) Dotson, the victim; (2) Michael Stewart, a security worker at the Spot II Lounge, where the shooting took place; (3) Racquel Jernigan, Dotson's fiancée who was at the bar with Dotson on the night of the shooting; (4) Aaron Reese, a police officer who responded to the scene; (5) Michael Hale, a detective assigned to the case; and (6) Jeffrey Ustin, a doctor who treated Dotson at MetroHealth Hospital.

**{¶6}** Dotson testified that he had been friends with Shepherd for 16 years, since they were children. In January 2011, Dotson sold drugs for a living. Sometime near the end of January, Dotson sold Shepherd "a bad package" of crack cocaine for $1,100. Shepherd wanted his money back. Dotson agreed that the crack was not good and agreed to give Shepherd his money back. Shepherd sent a woman to get his money from

Dotson. Dotson said he gave the woman $1,100 to give to Shepherd, but Shepherd said that he only received $1,000. Dotson and Shepherd argued over the $100, but Dotson ultimately agreed to give Shepherd another $100 because they were friends. Dotson did not give Shepherd the $100 at that point.

{¶7} The next time Dotson saw Shepherd was a few days later, on January 29, 2011, at the Spot II Lounge. Dotson went to the bar with Jernigan and her cousin. Dotson shook Shepherd's hand, and Shepherd asked Dotson for the $100. Dotson said that he only had about $50 to $75 on him, so he told Shepherd to come to his house to get the money when they left the bar. Shepherd told Dotson that he did not have a way to get to Dotson's house.

{¶8} Dotson walked to the other side of the bar to order a couple of drinks. Shepherd approached Dotson again, and said, "[y]ou ordering drinks, but you can't give me the $100." At that point, Dotson and Shepherd began arguing about the money. Dotson walked outside to have a cigarette. Shepherd followed Dotson outside. Dotson said there were also other people outside who he did not know. According to Dotson, Shepherd was "making everybody in an uproar." Dotson got angry that everyone was giving him advice and that Shepherd was making a big deal out of $100. Dotson asked Shepherd if he had his gun on him; Shepherd replied that he did not. Dotson then asked Shepherd if he wanted to fight him "over [the] $100." As Dotson approached Shepherd to fight him, Shepherd shot Dotson. Dotson said that Shepherd "wasn't even three arm reach" from him when Shepherd shot him. Shepherd shot Dotson two times, in his leg

and his abdomen.   Dotson said that as he tried to stand, his leg broke.   Jernigan took Dotson to the hospital.

{¶9}   Stewart testified that he provided security at the Spot II Lounge on weekends.   He was outside the bar when Dotson and Shepherd began fighting.   He heard Dotson ask Shepherd if he had a gun and heard Shepherd reply that he did not have a gun.   Stewart saw Dotson take off his coat and run toward Shepherd.   When Dotson got approximately one foot from Shepherd, Stewart saw Shepherd shoot Dotson.

{¶10} Jernigan testified that she went to the bar with Dotson and her cousin.   She heard Dotson and Shepherd fighting and heard the shots, but she did not see Shepherd shoot Dotson.   Jernigan said that Dotson told her that Shepherd shot him.

{¶11} The jury found Shepherd guilty of two counts of felonious assault with the firearm specifications, and the trial court found him guilty of having a weapon while under a disability.   The trial court merged the felonious assault counts and sentenced Shepherd to seven years for felonious assault, three years for the firearm specifications, and three years for having a weapon while under a disability, all to be served consecutively, for an aggregate sentence of 13 years in prison.   The trial court further notified Shepherd that he would be subject to five years of mandatory postrelease control upon his release from prison.   We note that five years of postrelease control is incorrect.   Shepherd should have received three years of mandatory postrelease control under R.C. 2967.28 (we will address this issue in Shepherd's fifth assignment of error where he challenges his sentence).   It is from this judgment that Shepherd appeals.

Speedy Trial

**{¶12}** In his first assignment of error, Shepherd contends that his constitutional and statutory speedy trial rights were violated.

**{¶13}** The right to a speedy trial is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, made obligatory on the states by the Fourteenth Amendment. The Ohio Constitution, Article I, Section 10, guarantees an accused this same right. *State v. MacDonald*, 48 Ohio St.2d 66, 68, 357 N.E.2d 40 (1976). Although the United States Supreme Court declined to establish the exact number of days within which a trial must be held, it recognized that states may prescribe a reasonable period of time consistent with constitutional requirements. *Barker v. Wingo*, 407 U.S. 514, 523, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In response to this authority, Ohio enacted R.C. 2945.71, which designates specific time requirements for the state to bring an accused to trial.

**{¶14}** When reviewing a speedy trial question, the appellate court must count the number of delays chargeable to each side and then determine whether the number of days not tolled exceeded the time limits under R.C. 2945.71. *State v. Barnett*, 12th Dist. No. CA2002-06-011, 2003-Ohio-2014, ¶ 7. Further, this court must construe the statutes strictly against the state when reviewing the legal issues in a speedy trial claim. *Brecksville v. Cook*, 75 Ohio St.3d 53, 55, 661 N.E.2d 706 (1996).

**{¶15}** The time to bring a defendant to trial can be extended for any of the reasons enumerated in R.C. 2945.72, including (1) "[a]ny period of delay occasioned by the

neglect or improper act of the accused," (2) "any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused," or (3) "the period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."  R.C. 2945.72(D), (E), and (H).

{¶16} R.C. 2945.71(C)(2) provides that a person against whom a felony charge is pending shall be brought to trial within 270 days after the person's arrest.  For purposes of computing time under R.C. 2945.71(C)(2), each day the accused is held in jail in lieu of bail on the pending charge shall be counted as three days. *See* R.C. 2945.71(E).  This "triple-count" provision reduces a defendant's speedy trial time to 90 days if the defendant is incarcerated the entire time preceding trial.  *State v. Dankworth*, 172 Ohio App.3d 159, 2007-Ohio-2588, 873 N.E.2d 902, ¶ 31 (2d Dist.).  Shepherd was in held in jail in lieu of bond during the pendency of his case and, thus, the triple-count provision applies.

{¶17} Shepherd was arrested on May 12, 2011.  Generally, when computing how much time has run against the state under R.C. 2945.71, we begin with the day *after* the accused was arrested.  *State v. Broughton*, 62 Ohio St.3d 253, 260, 581 N.E.2d 541 (1991).  Thus, Shepherd's speedy trial time began to run on May 13, 2011.

{¶18} Fifteen days passed until the first tolling event, which occurred on May 27, when Shepherd filed a demand for discovery.  While the speedy-trial clock is not tolled indefinitely by such a motion, it is tolled for a reasonable time.  *State v. Sanchez*, 110

Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283, ¶ 27. The state responded on June 6, 2011, well within a reasonable time. Thus, Shepherd's speedy trial time was tolled for those ten days, bringing Shepherd's speedy trial time to 25 days.

{¶19} The state also moved for discovery on the same day it responded to Shepherd's motion. Shepherd never responded to the state's discovery request. "The failure of a criminal defendant to respond within a reasonable time to a prosecution request for reciprocal discovery constitutes neglect that tolls the running of speedy-trial time pursuant to R.C. 2945.72(D)." *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011, paragraph one of the syllabus. What is a reasonable amount of time, however, is for the trial court to determine based on the particular circumstances of the case. *Id.* at paragraph three of the syllabus. Nonetheless, it is not necessary for us to remand to the trial court because we will not toll any time against him for not responding to the state's motion; but other events toll the time. *See State v. Ferrell*, 8th Dist. No. 93003, 2010-Ohio-2882, ¶ 30.

{¶20} On June 7, the docket indicates that a pretrial was held and continued to June 16 at the request of defendant. Thus, Shepherd's speedy trial time was tolled during this time, and as of June 16, Shepherd's speedy trial time remained at 25 days.

{¶21} On June 9, Shepherd filed a pro se "motion to deny consent to any continuances at defendant's request and to move this court to set a trial date." He filed several other pro se motions throughout the pendency of his case. A defendant who is represented by counsel, however, is not permitted to file pro se motions. *State v. Lenard*,

8th Dist. Nos. 96975 and 97570, 2012-Ohio-1636, fn. 1, citing *State v. Dudas*, 11th Dist. Nos. 2007-L-140 and 2007-L-141, 2008-Ohio- 3262, ¶ 92. Thus, Shepherd's pro se motions do not toll his speedy trial time (although as of June 7, his speedy trial time was being tolled due to his request for a continuance until June 16). Further, "[a] defendant's right to be brought to trial within the time limits expressed in R.C. 2945.71 may be waived by his counsel for reasons of trial preparation and the defendant is bound by the waiver even though the waiver is executed without his consent." *State v. McBreen*, 54 Ohio St.2d 315, 376 N.E.2d 5 (1978), syllabus.

{¶22} On June 16, a pretrial was held and continued to June 23 at the request of defendant. On June 23, a pretrial was held and continued to July 12 at the request of defendant. On July 12, a pretrial was held and continued to August 1 at the request of the defendant. On August 1, however, there is no journal entry indicating that the trial court held a pretrial. Thus, defendant's speedy trial time was tolled up to August 1. Time is charged against the state for ten days, from August 1 to August 10, bringing Shepherd's speedy trial time to 35 days.

{¶23} The docket indicates that on August 10, which was the trial date, the state requested a continuance until August 30 to compel a witness to appear. Dotson, the state's main witness, failed to appear for trial, and a warrant was issued for his arrest. A motion to continue that is filed by the state may toll speedy trial time so long as the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186, ¶ 41. A

prosecuting attorney's motion to continue based on the unavailability of a witness acts to extend the speedy trial provisions if the length of the delay is reasonable. We conclude that the prosecutor's request for a continuance and the length of delay were both reasonable and act to toll Shepherd's speedy trial time.

{¶24} On August 30, the docket indicates that the trial court held a pretrial. But it simply states "Nunc pro tunc entry as of and for 08/01/2011. Pretrial held 08/30/2011. Trial set for 08/10/2011 at 09:00 a.m. at the request of defendant." This entry is not clear. If the trial court was attempting to place an entry on the docket for August 1, it could not do so. A nunc pro tunc order that a court later enters on the docket cannot relate back to an earlier date because an order nunc pro tunc is not available to make the record reflect orders the court should have made but did not. *State v. Robinson*, 2d Dist. No. 2007-CA-32, 2008-Ohio-2897, ¶ 14.

{¶25} The next docket entry is August 31. Thus, we will count one day toward Shepherd's speedy trial time for August 30 because the court did not indicate what occurred on August 30, if anything (it had been the date the trial was supposed to occur after the state's request to compel its witness). As of August 31, Shepherd's speedy trial time was 36 days.

{¶26} On August 31, the trial court held a hearing. The docket indicates that the state was prepared to go to trial, but the trial court granted defense counsel's motion to withdraw as Shepherd's counsel. The trial court then appointed new counsel for Shepherd, and the case was continued at the request of defendant to September 15.

Speedy trial time is tolled by any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law. R.C. 2945.72(C). *Ferrell*, 8th Dist. No. 93003, 2010-Ohio-2882, at ¶ 37.

**{¶27}** Shepherd argues that the trial court abused its discretion in appointing new counsel because he objected to new counsel being appointed. But the record reflects that Shepherd did not object to new counsel being appointed as he claims. Defense counsel made his oral request to withdraw, stating that he and Shepherd had irreconcilable differences. The trial court asked Shepherd if he objected. Shepherd replied, "[i]f I object, then what?" The trial court explained what could happen if Shepherd objected. The trial court then asked Shepherd if he had any other questions. Shepherd replied that he did not. The trial court then granted defense counsel's motion to withdraw, which was entirely within its discretion to do so. *State v. Griffin,* 2d Dist. No. 24001, 2012-Ohio-503, ¶ 12, citing *State v. Murphy*, 91 Ohio St.3d 516, 747 N.E.2d 765 (2001).

**{¶28}** The docket further indicates that Shepherd's new defense counsel filed a series of discovery motions on September 2. The state did not respond until November. Again, Shepherd's speedy trial time was tolled for a reasonable amount of time, which is 30 days, as we stated previously. Thus, Shepherd's speedy trial time was tolled until October 2.

**{¶29}** Further, Shepherd requested to continue a scheduled pretrial six more times: on September 15, September 20, September 28, October 18, November 2, and November

21 (continued to the date of trial). During this time, all time was tolled due to Shepherd's continuances except from October 11 (when there is no docketed entry continuing the pretrial) to October 18 (the next docketed pretrial). For this time, seven days is charged to the state, bringing Shepherd's speedy trial time to 43 days. The November 21 continuance took Shepherd's case up to the date of his trial in December.

{¶30} Accordingly, we conclude that Shepherd's statutory speedy trial rights were not violated as it was well within the 90-day period.

{¶31} Regarding Shepherd's constitutional speedy trial rights, we find no violation. Shepherd was arrested in May 2011 and brought to trial in December 2011. As this court recently stated, until a defendant has met the "threshold requirement" of a "presumptively prejudicial" delay, we do not even get to the constitutional analysis set forth in the seminal case, *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *State v. Duncan*, 8th Dist. No. 97208, 2012-Ohio-3683, ¶ 8. Courts have generally found postaccusation delay to be "presumptively prejudicial" as it approaches one year. *Id.* at ¶ 9, citing *Doggett v. United States*, 505 U.S. 647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Here, seven months had elapsed. We do not find seven months to be presumptively prejudicial and, thus, Shepherd has not met the threshold requirement. Therefore, his constitutional speedy trial rights have not been violated.

{¶32} Shepherd's first assignment of error is overruled.

## Recorded Telephone Conversations

**{¶33}** In his second assignment of error, Shepherd argues that the trial court erred when it permitted recorded telephone conversations to be played to the jury without properly being authenticated. He contends that the state "attempted to authenticate these recordings through the testimony of Gregory Dotson, even though [Dotson] was not one of the parties on the phone call." The call was recorded from the county jail and was allegedly between Shepherd and his brother.

**{¶34}** The decision to admit or exclude evidence rests within the trial court's sound discretion. *State v. McGuire*, 80 Ohio St.3d 390, 400-401, 686 N.E.2d 1112 (1997). Thus, a reviewing court will not reverse the trial court's decision absent an abuse of discretion. *State v. Apanovitch*, 33 Ohio St.3d 19, 25, 514 N.E.2d 394 (1987). The term "abuse of discretion" implies that the court's attitude is unreasonable, unconscionable, or arbitrary. *State v. Adams*, 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980). Furthermore, "[w]hen applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court." *In re Jane Doe 1*, 57 Ohio St.3d 135, 137-138, 566 N.E.2d 1181 (1991).

**{¶35}** Evid.R. 901 provides in relevant part:

(A) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(B) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

* * *

(5) Voice identification.  Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

(6) Telephone conversations.  Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if (a) in the case of a person, circumstances, including self-identification, show the person answering to be the one called, or (b) in the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

**{¶36}** In *State v. Thompson*, 8th Dist. No. 96929, 2012-Ohio-921, ¶ 27-29, this court explained:

> Evid.R. 901 governs the authentication of demonstrative evidence, including recordings of telephone conversations.  The threshold for admission is quite low, and the proponent of the evidence need only submit "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Evid.R. 901(A).  "[T]he proponent must present foundational evidence that is sufficient to constitute a rational basis for a jury to decide that the primary evidence is what its proponent claims it to be."  *State v. Tyler*, 196 Ohio App.3d 443, 2011-Ohio-3937, 964 N.E.2d 12 (4th Dist.) ¶ 25, citing *State v. Payton,* 4th Dist. No. 01-CA2606, 2002 Ohio App. LEXIS 496 (Jan. 25, 2002).  A proponent may demonstrate genuineness or authenticity through direct or circumstantial evidence.  *Id.*, citing *State v. Williams*, 64 Ohio App.2d 271, 274, 413 N.E.2d 1212 (8th Dist.1979).

> For a recorded telephone call to be admissible, the recording must be "authentic, accurate, and trustworthy."  *Tyler* at ¶ 26, citing *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263.  But, because "conclusive evidence as to authenticity and identification need not be presented to justify allowing evidence to reach the jury," the evidence required to establish authenticity need only be sufficient to afford a rational basis for a jury to decide that the evidence is what its proponent claims it to be.  *State v. Bell*, 12th Dist. No. CA2008-05-044, 2009-Ohio-2335, ¶ 17, 30.

Thus, in this case, to establish that the audio recording was what the state claimed it to be, namely, recordings of jailhouse conversations * * *, the state was not required to "prove beyond any doubt that the evidence is what it purports to be." *State v. Moshos*, 12th Dist. No. CA2009-06-008, 2010-Ohio-735, ¶ 12, citing *State v. Aliff*, 4th Dist. No. 99CA8, 2000 Ohio App. LEXIS 1676 (Apr. 12, 2000). Instead, the state needed only to demonstrate a "reasonable likelihood" that the recording was authentic. *Bell* at ¶ 30, citing Evid.R. 901(B)(1). Such evidence may be supplied by, but is not limited to, the testimony of a witness with knowledge, voice identification, or by evidence that a call was made to the number assigned at the time by the telephone company to a particular person. *See* Evid.R. 901(B)(1), (5), and (6); *Moshos* at ¶ 14; *State v. Small,* 10th Dist. No. 06AP-1110, 2007-Ohio-6771, ¶ 38.

{¶37} In *Thompson*, the defendant argued that the witness who identified a voice on the jailhouse recording was not sufficient to authenticate the recording because the state did not establish through proper police testimony "the process by which they retrieved the recordings accurately reproduced and copied the original conversations." *Id.* at ¶ 30. This court disagreed, stating:

Evid. R. 901 provides for two methods by which a trial court may find that these phone conversations are admissible. Evid.R. 901(B)(9) provides that a sound recording may be authenticated through evidence that demonstrates a process or system used that produces an "accurate result." And Evid.R. 901(B)(5) provides for authentication by voice identification "whether heard firsthand or through mechanical or electronic transmission or recording." Consequently, it was not necessary that [the police officers] testify to the procedure by which they reproduced and copied [the defendant's] jailhouse phone calls.

*Id.* at ¶ 31.

**{¶38}** Here, the state played the recorded telephone conversation during Dotson's testimony. Dotson testified that he recognized Shepherd's voice as the "louder" person on the call. Dotson testified that he had known Shepherd since they were children. He further testified that he had spoken to Shepherd on the telephone many times. Dotson said that he knew Shepherd very well and was familiar with his voice. Thus, the state provided foundational evidence that was sufficient to constitute a rational basis for the jury to decide that the voice on the recording was Shepherd's voice.

**{¶39}** Shepherd's argument that the state should have also submitted testimony of an employee of the county jail to establish "how and when these recordings were made" is unpersuasive. Evid.R. 901(B) states that a voice on a recorded telephone conversation can be identified by someone who is familiar with the voice on the recorded call. The state did that here through Dotson's testimony. Further, we note that any break in the chain of custody goes to the weight afforded to the evidence, not to its admissibility. *Columbus v. Marks*, 118 Ohio App. 359, 194 N.E.2d 791 (10th Dist.1963); *State v. Mays*, 108 Ohio App.3d 598, 671 N.E.2d 553 (8th Dist.1996).

**{¶40}** Accordingly, we conclude that the trial court did not abuse its discretion when it admitted the recorded telephone conversation. Shepherd's second assignment of error is overruled.

Ineffective Assistance of Counsel

**{¶41}** In his third assignment of error, Shepherd argues that his trial counsel was ineffective (1) for failing to request an instruction on the inferior degree offense of aggravated assault, and (2) for failing to present an argument for self-defense.

**{¶42}** To sustain a claim of ineffective assistance of counsel, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different when considered in relation to the totality of the evidence before the court. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶43}** With regard to the first prong, counsel is entitled to a strong presumption that his or her conduct falls within the vast range of reasonable professional assistance. The defendant must therefore overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* at 689. Strategic and tactical decisions fall squarely within the scope of professionally reasonable judgment. *Id.* at 699.

**{¶44}** With respect to the second prong, the defendant must demonstrate that he or she was prejudiced by "a probability sufficient to undermine confidence in the outcome." *Id.* at 694. The inquiry is whether counsel's errors were so serious as to deprive the defendant of a proceeding whose results are reliable, i.e., "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

{¶45} Any questions regarding the ineffectiveness of counsel must be viewed in light of the evidence against the defendant with a strong presumption that counsel's conduct is within the broad range of professional assistance. *State v. Bradley*, 42 Ohio St.3d 136, 142-143, 538 N.E.2d 373 (1989).

{¶46} The offense of aggravated assault is an inferior degree of felonious assault because its elements are identical to or contained within the offense of felonious assault, coupled with the additional presence of one or both mitigating circumstances of sudden passion or a sudden fit of rage brought on by serious provocation occasioned by the victim. *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph four of the syllabus. In other words, aggravated assault is the same conduct as felonious assault but its nature and penalty are mitigated by provocation. *Id.*, citing *State v. Scott*, 10th Dist. No. 00AP-868, 2001 Ohio App. LEXIS 1420 (Mar. 27, 2001). A defendant bears the burden of proving the mitigating factor by a preponderance of the evidence. *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992), syllabus.

{¶47} In order to prove the affirmative defense of self-defense, a defendant must establish: (1) that he was not at fault in creating the situation giving rise to the affray, (2) that he had a bonafide belief that he was in imminent danger of bodily harm and that his only means of escape from such danger was in the use of such force, and (3) that he did not violate any duty to retreat or avoid the danger. *State v. Belanger*, 190 Ohio App.3d 377, 2010-Ohio-5407, 941 N.E.2d 1265, ¶ 4 (3d Dist.). If defendant "fails to prove any one of these elements by a preponderance of the evidence he has failed to demonstrate

that he acted in self-defense." *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).

{¶48} After reviewing the record, we conclude that defense counsel's performance was not deficient for failing to request jury instructions on aggravated assault and for failing to present a self-defense argument. Aggravated assault and self-defense were inconsistent with Shepherd's theory at trial that he had left the bar by the time Dotson was shot.

{¶49} During his opening statement, defense counsel explained to the jury that Shepherd was at the Spot II Lounge when Dotson and his girlfriend came in the bar. Defense counsel stated that Dotson walked up to Shepherd and they discussed the $100. Defense counsel told the jury that Shepherd and Dotson "finally reached an accord, an agreement," and that "[his] client then walked out of the bar and left." Defense counsel went on to tell the jury, "My client has no further explanation as to what happened. He was not there. He was not the shooter, and he is not guilty of this particular offense."

{¶50} Moreover, other transcript testimony lends insight as to why defense counsel preceded on the theory that Shepherd was not present during the shooting. On the day of trial, before the trial court called the jury, it asked defense counsel, "[h]as your client given any consideration to a plea in this case?" Defense counsel responded, "[y]our Honor, I have talked to him in depth about the possibility of pleading. He said he was not there. He did not do it. I told him that I thought it was in his best interest to consider a plea and [he] still hasn't."

**{¶51}** Defendant interjected that his counsel never discussed a plea with him. The state then stepped in and stated that on the previous day it had, in fact, offered a plea deal to Shepherd, where he would plead guilty to aggravated assault with a one-year gun specifications, as well as having a weapon while under a disability, and the remaining charges and specifications would be nolled. Defense counsel then explained for the record that he did speak to his client about the potential plea. Defense counsel further explained that Shepherd's sister also tried to get him to take the plea deal. Shepherd told the court that he did talk to his sister, but said they got into an argument and he "asked for her to be removed."

**{¶52}** The trial court stated:

> I'm not going to invade the attorney/client privilege, but I have talked to your attorney and the prosecutor on numerous occasions about this case. This case is probably one of the more heavily pretried cases that I have had in 21 years that I have been a judge * * *. On repeated occasions I have asked your present counsel and I asked your former counsel if they have discussed plea bargains with you. In both instances both attorneys on numerous occasions have told me, yes, and you have completely rejected any discussion of plea bargain at any time.

**{¶53}** The trial court then stated, "Now, that's what they have told me, okay. There is the potential of a plea bargain here today. Did you hear that?" Shepherd replied that he had. The court then asked him, "[a]re you interested in a plea bargain?" Shepherd replied, "[n]ot the one that she is — no." The trial court then called the jury.

**{¶54}** Accordingly, Shepherd was not deprived of his right to effective counsel. His third assignment of error is overruled.

<u>Ex Parte Communications with the Jury</u>

{¶55} In his fourth assignment of error, Shepherd argues that the trial court erred when it answered a jury question without consulting counsel and outside of his presence.

{¶56} The Fifth Amendment to the federal constitution, enforceable against the states through the Fourteenth Amendment, prohibits the various states from depriving any person "of life, liberty, or property, without due process of law." Similarly, the Ohio Constitution, Article I, Section 10, mandates that "[i]n any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel." As the constitutional principle of due process has evolved on both the state and federal levels, the courts have broadened its guarantees to mandate the presence of the defendant, absent waiver of his rights or other extraordinary circumstances, at every stage of his trial. *See State v. Grisafulli*, 135 Ohio St. 87, 19 N.E.2d 645 (1939); *Jones v. State*, 26 Ohio St. 208 (1875). In Ohio, the expanded scope of the Due Process Clause, at least in criminal proceedings, had been embodied in Crim.R. 43(A) which provides, in pertinent part, that a "the defendant must be physically present at every stage of the criminal proceeding and trial[.]"

{¶57} With these principles in mind and citing to cases from the mid-to- late1800s, the Ohio Supreme Court held that "[a] defendant in a criminal case has a right to be present when, pursuant to a request from the jury during its deliberations, the judge communicates with the jury regarding [the jury] instructions." *State v. Abrams*, 39 Ohio St.2d 53, 313 N.E.2d 823 (1974), paragraph one of the syllabus. Thus, "'[a] court or judge has no right to communicate with the jury respecting the charge of the court, after

the jury has retired, except publicly, and in the presence of the accused. To do so is good cause for a new trial.'" *Abrams* at 55, quoting *Kirk v. State*, 14 Ohio 511 (1846).

{¶58} The Ohio Supreme Court has made clear, however, that erroneous communications between the trial court and the jury constitute good cause for a new trial only if the communications prejudiced the defendant's right to a fair trial. *Abrams* at 56; *State v. Jenkins*, 15 Ohio St.3d 164, 233-237, 473 N.E.2d 264 (1984). In *Bostic v. Connor*, 37 Ohio St.3d 144, 524 N.E.2d 881 (1988), the Ohio Supreme Court explained that courts have found "a defendant or party" was "prejudiced by an ex parte communication between a judge and jury [when it] involved the possibility that the jury's verdict might have been influenced by the judge's response." *Id.* at 149-150.

{¶59} Just before the trial court read the jury's verdict in the presence of the state, Shepherd, his counsel, and the jury, it stated on the record:

> I would like to put one thing on the record. There was one question during deliberations, and the question is as follows: Are we to choose between the gun charges, firearm specifications R.C. 2941.141 and R.C. 2941.145, question, or do we choose a verdict on all charges?
>
> And my response was to them in writing was: Return a verdict on both counts and all gun specifications.

{¶60} When reading the question into the record, the trial court did not state whether it had discussed the jury's question with defense counsel or the state before it gave its response to the jury. Shepherd's counsel did not object, however, when the trial court read the jury question into the record before the verdict. Nor did Shepherd's

counsel move for a new trial based on the trial court's purported ex parte communication with the jury.

{¶61} In *State v. Chinn*, 85 Ohio St.3d 548, 568, 709 N.E.2d 1166 (1999), the Ohio Supreme Court explained in an appeal of right involving a death penalty sentence:

> Appellant contends that he is entitled to a new trial because there is nothing in the record to indicate that appellant and defense counsel were present on two occasions involving communications between the trial court and the jury. However, we are unwilling to presume that appellant and his attorneys were not present during the times in question. Rather, "the record must *affirmatively indicate the absence* of a defendant or his counsel during a particular stage of the trial." (Emphasis added.) The record does not affirmatively so indicate and, therefore, we reject appellant's tenth proposition of law.

(Emphasis sic and internal citation omitted.)

{¶62} Here, the record does not affirmatively establish that Shepherd or his counsel were absent when the trial court responded to the jury's question. If anything, the fact that defense counsel did not object would lend more support to the presumption that defense counsel knew about the jury question and either participated in fashioning a response or did not object to the trial court's response.

{¶63} Shepherd does not argue that the trial court's response influenced the jury's verdict in any way, nor does he explain how he was prejudiced by the trial court's answer; he merely contends that because he was not present, he was deprived of a fair trial. He cites to two Tenth District cases in support of his argument, *State v. Sales*, 10th Dist. No. 02AP-175, 2002-Ohio-6563, and *State v. Wade*, 10th Dist. No. 03AP-774, 2004-Ohio-3975, claiming they stand for the proposition that because the appellate court

could not determine from the record "if the defendant or counsel was present when the trial court answered a jury's question," a new trial was warranted.

{¶64} If, however, *Sales* and *Wade* stood for what Shepherd contends they do, they would violate the Ohio Supreme Court's holding in *Chinn,* 85 Ohio St.3d 548, 568, 709 N.E.2d 1166, that the record must affirmatively establish the absence of a defendant or his counsel during a particular stage of the trial. *See Chinn*, *supra*. After a thorough review of these cases, however, we conclude that they do not conflict with *Chinn*, nor do they stand for Shepherd's purported proposition.

{¶65} In *Sales* and *Wade*, the Tenth District found that the record did affirmatively establish the absence of the defendants and their counsel. In both cases, the trial court went on the record as it received each jury question, read the question into the record, and indicated its response on the record. The Tenth District court distinguished *Chinn*, and found that because the transcript indicated the presence of defendant and counsel at different points throughout the trial, but did not do so with respect to the jury questions, the record *affirmatively established the absence* of appellant and his counsel by its silence. *Wade* at ¶ 24; *Sales* at ¶ 13. (We note that in Shepherd's case, because the trial court did not read the question into the record in real time as it occurred, we cannot make the same inference that the Tenth District did in *Wade* and *Sales*.) Rather, the Tenth District reversed both cases for a new trial because of several substantive issues it found with respect to the trial court's responses to the jury in the absence of the defendants, i.e., it therefore found that the defendants were prejudiced by the trial court's responses in

their absence. Thus, we conclude that *Sales* and *Wade* are not analogous to the facts of this case.

**{¶66}** Accordingly, Shepherd's fourth assignment of error is overruled.

Vindictive Sentence

**{¶67}** In his fifth assignment of error, Shepherd claims that his sentence was contrary to law because the trial court punished him for exercising his right to go to trial.

**{¶68}** In *State v. Stradford*, 8th Dist. No. 95116, 2011-Ohio-1566, this court explained:

> "A defendant is guaranteed the right to a trial and should never be punished for exercising that right or for refusing to enter a plea agreement." *State v. Evans*, 8th Dist. No. 85396, 2007-Ohio-3278, ¶10, citing *State v. O'Dell*, 45 Ohio St.3d 140, 147, 543 N.E.2d 1220 (1989). It is improper to sentence a defendant more severely simply because he exercised his right to trial. *Columbus v. Bee*, 67 Ohio App.2d 65, 425 N.E.2d 404 (1979). The United States Supreme Court has held that a trial court violates the Due Process Clause of the Fourteenth Amendment when it imposes a harsher sentence motivated by vindictive retaliation. *N. Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
> "The court cannot punish an accused for rejecting an offered plea bargain and electing to proceed to trial." *State v. Paul*, 8th Dist. No. 79596, 2002 Ohio App. LEXIS 551, *39-40, quoting *O'Dell* supra, paragraph two of the syllabus. Vindictiveness on the part of a sentencing court is not presumed merely because the sentence imposed is harsher than one offered in plea negotiations. *State v. Mitchell*, 117 Ohio App.3d 703, 691 N.E.2d 354 (8th Dist.1997). To determine whether a court acted with vindictiveness, we look to see whether the record affirmatively shows retaliation as a result of the rejected plea bargain. *Paul*, supra, citing *State v. Warren*, 125 Ohio App.3d 298, 307, 708 N.E.2d 288 (8th Dist.1998). There must be some positive evidence that portrays a vindictive purpose on the court's part. *State v. Finley*, 2d Dist. No. 19654, 2004-Ohio-661, ¶42.

*Stradford* at ¶ 23-24.

**{¶69}** Moreover, as we stated in *Paul*:

Vindictiveness is one thing; imposing a sentence greater than that discussed in plea negotiations is another thing. When an accused rejects the offer of a plea bargain, elects to exercise the right to trial, and is found guilty, the court is not required to impose sentence within the parameters discussed in the rejected plea bargain. The incentive within a plea bargain is a reduced sentence in exchange for avoiding the time and expense of trial. *Santobello v. New York* (1971), 404 U.S. 257, 260, 30 L. Ed. 2d 427, 92 S. Ct. 495. It would be counterintuitive to think that the court is somehow bound to the sentence limits discussed in the plea negotiations, even though it had been rejected by the accused.

*Id.* at *40.

**{¶70}** Shepherd's arguments (that the trial court was vindictive) relate to the plea offer that he rejected in August 2011, when he was represented by his first attorney (this is not the same plea deal that he rejected on the day of his December 2011 trial). At an August 31, 2011 hearing, the state informed the trial court that it had reached a plea deal with Shepherd, where he would plead guilty to aggravated assault with a one-year gun specification, and all other charges and specifications would be nolled. The trial court complied with Crim.R. 11 and informed Shepherd of his constitutional rights. When the trial court explained to Shepherd that he could face a maximum sentence of two and one-half years in prison, Shepherd replied, "They told me 18 months. That's what I was promised today if I copped out today." The trial court explained to Shepherd that it would not sentence him to 18 months because the case involved the use of a firearm and someone getting shot. It further explained to Shepherd that he had a prior record and that he would receive 18 months for the aggravated assault and one year for the gun specification, for a total of two and one-half years in prison. Shepherd told the trial court that if he did not get 18 months, he did not want to enter into the plea.

**{¶71}** After Shepherd was found guilty of all counts, the trial court sentenced Shepherd to an aggregate sentence of 13 years in prison. There is nothing in the record to affirmatively demonstrate that the trial court gave Shepherd a greater sentence because he exercised his right to a trial. At the August 31, 2011 plea hearing, the state was offering a deal to Shepherd where he would plead guilty to aggravated assault, which is a fourth degree felony, plus a one year gun specification. As the trial court told Shepherd at the plea hearing, the maximum he could receive for that plea would have been 18 months for the aggravated assault and one year for the gun specification, or two and one-half years. Shepherd, however, did not agree to that plea deal.

**{¶72}** After going to trial, however, Shepherd was convicted of two counts of felonious assault, felonies of the second degree, with the one- and three-year firearm specifications, as well as having a weapon while under a disability, a felony of the third degree. When he was sentenced, Shepherd was facing a maximum of 14 years in prison. Thus, the plea offer made by the state contained a possible maximum sentence that was significantly less than the maximum sentence Shepherd was facing if convicted of all charges and specifications, which he was.

**{¶73}** Further, the court sat through the trial and heard the testimony presented. During the course of receiving evidence, a trial judge may well gain "a fuller appreciation of the nature and extent of the crimes charged" as well as receiving "insights into [the offender's] moral character and suitability for rehabilitation." *State v. Mitchell*, 117

Ohio App.3d 703, 706, 691 N.E.2d 354 (8th Dist.1997), citing *Alabama v. Smith*, 490 U.S. 794, 104 L.Ed.2d 865, 109 S.Ct. 2201 (1989).

**{¶74}** The trial court sat through a trial where it heard evidence of a senseless shooting over $100. Shepherd fired his gun at Dotson several times in the parking lot of a bar, where a crowd of people had gathered. This senseless shooting resulted in Dotson being seriously injured. One of the bullets hit Dotson's femur, causing it to fracture into "multiple pieces." That bullet still remained in his leg. The other bullet went through Dotson's abdomen, perforating his colon and lodging in his spine, where it still remained. Because of Shepherd's actions, doctors had to remove part of Dotson's colon and had to place a metal rod in his leg. At the time of sentencing, Dotson was still going through rehabilitation.

**{¶75}** Accordingly, we conclude that the trial court was not vindictive when it sentenced Shepherd.

H.B. 86 and Postrelease Control

**{¶76}** In his fifth assignment of error, Shepherd argued that his sentence was contrary to law because the trial court was vindictive when sentencing him. Although we do not agree that the trial court was vindictive, we do find his sentence to be contrary to law.

**{¶77}** Shepherd was sentenced in January 2012. He was therefore subject to the amendments in H.B. 86. *State v. Blackburn*, 8th Dist. Nos. 97811 and 97812, 2012-Ohio-4590, ¶ 30. The trial court, however, failed to apply the H.B. 86 amendments

when sentencing Shepherd to consecutive sentences. The consecutive portion of Shepherd's sentence is therefore contrary to law.

**{¶78}** An appellate court must conduct a meaningful review of the trial court's sentencing decision. *State v. Johnson*, 8th Dist. No. 97579, 2012-Ohio-2508, ¶ 6, citing *State v. Hites*, 3d Dist. No. 6-11-07, 2012-Ohio-1892, ¶ 7. Specifically, R.C. 2953.08(G)(2) provides that our review of consecutive sentences is not an abuse of discretion. An appellate court must "review the record, including the findings underlying the sentence or modification given by the sentencing court." *Id.* If an appellate court clearly and convincingly finds either that (1) "the record does not support the sentencing court's findings under [R.C. 2929.14(C)(4)]" or (2) "the sentence is otherwise contrary to law," then "the appellate court may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *Id.*

**{¶79}** H.B. 86 revived the provision under S.B. 2 that required trial courts to make findings before imposing consecutive sentences. *Blackburn* at ¶ 32. R.C. 2929.14(C)(4), as revived, now requires that a trial court engage in a three-step analysis in order to impose consecutive sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id.* Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id.* Finally, the trial court must find that at least one of the following applies:

(1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*

{¶80} In each step of this analysis, the statutory language directs that the trial court must "find" the relevant sentencing factors before imposing consecutive sentences. R.C. 2929.14(C)(4). In making these findings, a trial court is not required to use "talismanic words to comply with the guidelines and factors for sentencing." *State v. Brewer*, 1st Dist. No. C-000148, 2000 Ohio App. LEXIS 5455, *10 (Nov. 24, 2000). But it must be clear from the record that the trial court actually made the findings required by statute. *See State v. Pierson*, 1st Dist. No. C-970935, 1998 Ohio App. LEXIS 3812 (Aug. 21, 1998). A trial court satisfies this statutory requirement when the record reflects that the court has engaged in the required analysis and has selected the appropriate statutory criteria. *See State v. Edmonson*, 86 Ohio St.3d 324, 326, 715 N.E.2d 131 (1999).

{¶81} Under H.B. 86, however, a trial court is not required to articulate and justify its findings at the sentencing hearing when it imposes consecutive sentences as it had to do under S.B. 2. *Blackburn* at ¶ 35. This is because the General Assembly deleted the

former R.C. 2929.19(B)(2)(c) in H.B. 86, which was the provision in S.B. 2 that had required sentencing courts to state their *reasons* for imposing consecutive sentences on the record. As we explained in *Blackburn*, a trial court is free to express and justify its reasons, of course, but it does not commit reversible error if it fails to do so, as long as it has made the required findings. *Id.* at ¶ 35.

{¶82} Here, the trial court failed to make any express findings under R.C. 2929.14(C)(4). In fact, the trial court seemed to be completely unaware of the amendments enacted in H.B. 86. The trial court did discuss Shepherd's prior criminal history, which could equate to making two of the findings, namely (1) that "consecutive service is necessary to protect the public from future crime or to punish the offender," and (2) that the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. The trial court, however, failed to make the mandatory finding that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶83} Thus, the portion of the trial court's judgment ordering that Shepherd's sentence for felonious assault be served consecutive to his sentence for having a weapon while under a disability is contrary to law and vacated.

{¶84} We further note that when sentencing Shepherd on the weapons disability count, the trial court incorrectly stated at the sentencing hearing that the "maximum penalty there is 5 years" because it is a third degree felony. The trial court informed

Shepherd that it would "not impose the maximum penalty, but [it would] impose a penalty of 3 years." H.B. 86, however, reduced the sentencing range for some third degree felonies, including a weapons disability charge. The new range for this offense is "nine, twelve, eighteen, twenty-four, thirty, or thirty-six months." R.C. 2929.14(A)(3)(b). Because Shepherd was sentenced after the effective date of H.B. 86, he was entitled to the benefit of the newly enacted lower ranges.

{¶85} Section 4 of H.B. 86 states that the amendments "apply to a person who commits an offense specified or penalized under those sections on or after the effective date of this section and to a person to whom division (B) of section 1.58(B) of the Revised Code makes the amendments applicable." R.C. 1.58(B) provides that "[i]f the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended." Pursuant to H.B. 86 and R.C. 1.58, Shepherd was entitled to the benefit of these amendments because the "penalty, forfeiture, or punishment" was "not already imposed" as of September 30, 2011. Nonetheless, we recognize that the trial court sentenced Shepherd to three years for this offense, which equals 36 months, and is, therefore, not contrary to law.

{¶86} We do, however, find the portion of Shepherd's sentence relating to postrelease control to be contrary to law. The trial court advised Shepherd that he would be subject to five years of mandatory postrelease control upon his release from prison. But under R.C. 2967.28(B)(2), Shepherd is only subject to a mandatory three years of

postrelease control. Accordingly, the postrelease control portion of Shepherd's sentence is contrary to law and vacated.

{¶87} We vacate only those portions of Shepherd's sentence that are contrary to law. We remand this case to the trial court for a new sentencing hearing to consider whether consecutive sentences are appropriate under H.B. 86, and if so, to enter the proper findings on the record. We note that the sentencing ranges for each offense (i.e., seven years for felonious assault and three years for weapons disability) remain intact. We further instruct the trial court to properly notify Shepherd that he will be subject to a mandatory three years of postrelease control upon his release from prison.

### Cumulative Error

{¶88} In his sixth assignment of error, Shepherd maintains that the cumulative nature and impact of the errors that occurred at his trial, when taken as whole, deprived him of a fair trial. Shepherd's argument is unpersuasive. Because we have found error only with respect to Shepherd's sentence, we do not agree that he was deprived of a fair trial. Shepherd's sixth assignment of error is overruled.

{¶89} Convictions affirmed; sentence affirmed in part and vacated in part; consecutive portion of sentence and postrelease control vacated. This case is remanded for a new sentencing hearing on those portions that are vacated.

It is ordered that appellee and appellant share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for a new sentencing hearing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, PRESIDING JUDGE

LARRY A. JONES, SR., J., and
MARY EILEEN KILBANE, J., CONCUR